# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTGOMERY BLAIR SIBLEY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Civil Action No. 12-cv-00001 (JDB) |
| BARACK OBAMA, *et al.*, | ) ) |
| Defendants. | ) ) ) |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION

Defendants respectfully move to dismiss Plaintiff's claims in his Amended Complaint

(dkt. no. 5), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## BACKGROUND

This case presents the Court with the latest in a series of unsuccessful lawsuits alleging

that President Obama is not a "natural born citizen" as required by the Constitution. *See* U.S.

CONST. art. II, § 1. The federal and state courts, including, on at least two occasions, the United

States District Court for the District of Columbia, have previously rejected these challenges on

both procedural grounds and the merits. *See, e.g.*, *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C.

2010) (Lamberth, C.J.); *Hollister v. Soetoro*, 601 F. Supp. 2d 179 (D.D.C. 2009) (Robertson, J.);

*Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011); *Kerchner v. Obama*, 669 F. Supp. 2d 477 (D.N.J.

2009), aff'd *Kerchner v. Obama*, 612 F.3d 204 (3rd Cir. 2010); *Cook v. Good*, 2009 U.S. Dist.

LEXIS 126144 (M.D. Ga. 2009), appeal dismissed by dkt. no. 09-14698-CC (Feb. 26, 2010);

*Tisdale v. Obama*, No. 3:12-cv-00036 (E.D. Va. Jan. 23, 2012) ("It is well settled that those born

in the United States are considered natural born citizens" and challenges to President Obama's

eligibility are "without merit"); *Ankeny v. Governor of Ind.*, 916 N.E.2d 678 (Ind. Ct. App. 2009)

("persons born within the borders of the United States are 'natural born Citizens' for Article II,

Section 1 purposes, regardless of the citizenship of their parents"), transfer denied 929 N.E.2d

789 (Ind. 2010). Although Plaintiff frames this action with a slightly-divergent set of legal

theories – including his affirmation of a "write-in candidacy" for President in 2012 – this case

largely embodies the same set of allegations, with the exception of the inclusion of a separate

and apparently-unrelated *Bivens* claim against the United States Marshals Service and two

Deputy U.S. Marshal John Doe defendants.[1] These minor variations make no difference to the

ultimate outcome: as with the other claims challenging President Obama's eligibility for office,

this action should be dismissed in its entirety.

## ARGUMENT

I. **Plaintiff's claims for quo warranto should be dismissed because Plaintiff lacks standing to challenge the President's current term in office and the relief Plaintiff seeks is unavailable through quo warranto.**

Although grouped together under the common rubric of "quo warranto," Plaintiff's

amended complaint is properly understood to use that label to pursue two distinct claims against

Defendant President Obama.  First, Plaintiff seeks to bar President Obama from "appearing on

the ballot for the 2012 Presidential election." Amend. Compl. at ¶¶ 21, 23; *see id.* at ¶1(a).

Second, Plaintiff seeks to "oust[]" the President from the office which he has held since

---

[1] Plaintiff's *Bivens* claim alleges that on September 15, 2009, and on one unidentified previous occasion, he received an escort between the entrance of the United States Courthouse and the U.S. District Court Clerk's Office. *See* Plaintiff's First Amended Certified Petition for Writs Quo Warranto and Mandamus and Complaint for Declaratory Relief and Damages, dkt. no. 5 (hereafter "Amended Compl.") at ¶ 9.

inauguration on January 20, 2009. *See id*. Because Plaintiff has no standing to challenge President Obama's current tenure in office and cannot use quo warranto to challenge President Obama's placement on the ballot for the next election, these claims should be dismissed.

     A.  Quo warranto is not available to challenge the eligibility of candidates to appear on the 2012 election ballot.

Plaintiff repeatedly invokes the D.C. Code's quo warranto provisions, *see* D.C. Code 16-3501 *et seq.*, and the common-law writ of quo warranto as the bases for relief "preventing [President Obama] from . . . being on the ballot for [President] in 2012." Amend. Compl. at caption; ¶¶ 1(b), 18, 23. This claim cannot succeed because quo warranto – whether understood through its current statutory foundation or through its roots as a common law writ – is not a method of challenging a candidate's appearance on an election ballot and cannot be used in lieu of the appropriate legal means to do so.

The writ of quo warranto is a "common-law writ used to inquire . . . if persons who had no right to do so were occupying some public office." Black's Law Dictionary 1371 (9th ed. 2009). Issuance of the writ has the effect of having the occupier of such office "ousted from the illegal [] office." *Id.* Aside from providing historical illustration, however, Plaintiff's citations to the common law background do not provide a basis for the relief he seeks because, "except as otherwise specifically provided by statute, there is no original jurisdiction in the federal district court to entertain an information in the nature of quo warranto." *U.S. ex rel. State of Wis. v. First Fed. Sav. & Loan Ass'n*, 248 F.2d 804, 809 (7th Cir. 1957); *see also Drake v. Obama*, 664 F.3d at 784-85 (observing that the D.C. Code contains the statutory authority for modern-day quo warranto actions against federal officers).

As noted by Plaintiff, the D.C. Code contains a statutory provision which authorizes certain quo warranto actions in this Court. This statute states in part that:

> [a] quo warranto may be issued from the United States District Court for the District of Columbia in the name of the United States against a person who within the District of Columbia usurps, intrudes into, or unlawfully holds or exercises, a franchise conferred by the United States or a public office of the United States, civil or military. The proceedings shall be deemed a civil action.

D.C. Code § 16-3501.

The text of the statute thereby adopts an important facet of the common law quo warranto: that a petition for quo warranto is brought against an officeholder to challenge his current tenure, rather than in relation to a future term of office. *See Broyles v. Commonwealth,* 309 Ky. 837, 839 (1949) (A quo warranto action "will not lie against one who merely lays claim to the office. The term must have begun and the defendant have assumed, usurped or taken possession of the office."); *Cf. State ex rel. Koshmider v. King*, 2000 Ohio App. LEXIS 5566 (Ohio Ct. App., Sixth App. Dist., Huron Cty., 2000) (holding that a suspended city manager could not yet contest the office in question until he had been "removed from his office").  President Obama's presence on the ballot for the upcoming election is not equivalent to his tenure in office for the next term, beginning January 20, 2013. *See* U.S. CONST. amend. XX ("The term[] of the President . . . shall end at noon on the 20th day of January . . . .").

Defendants are mindful that "a pro se complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Bickford v. Gov't of the United States*, 808 F.Supp. 2d 175 (D.D.C. 2011) (Friedman, J.), (quoting *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008)). Nevertheless, it does not appear from the complaint that Plaintiff brings any other cognizable challenge to the President's eligibility to appear on the election ballot.

4

Importantly, the text of Plaintiff's amended complaint repeatedly links his ballot-access challenge to the quo warranto provision. *See* Amend. Compl. at caption (describing Plaintiff's "First Amended Certified Petition for Writs Quo Warranto and Mandamus and Complaint for Declaratory Relief and Damages"); ¶ 1(a) (seeking a writ "ousting" the President "and/or preventing him from . . . being on the ballot for that office in 2012");  ¶¶ 21-23 (stating both that he "tests" the President's "right to (i) public office . . . and (ii) as the nominee . . . appearing on the ballot"). Plaintiff does not state any other basis under which this Court could hear his claim seeking to remove the from upcoming election ballots in the District of Columbia.

Moreover, although Plaintiff claims that his interest in seeing the President barred from the ballot in the upcoming election stems from Plaintiff's submission of an "Affirmation of Write-in Candidacy" to the District of Columbia Board of Elections and Ethics, *see* Amend. Compl. at ¶5, *id.* at Ex. A, Plaintiff does not allege that he has brought any election eligibility complaint to that body. Under the D.C. Code, it is the responsibility of the D.C. Board of Elections and Ethics to, *inter alia*, "[d]etermine that candidates meet the statutory qualifications for office"; "certify" both "nominees and the results of elections"; and "conduct a presidential preference primary election" for political parties meeting certain eligibility requirements. *See* D.C. Code §1-1001.05. The D.C. Code also contains provisions for challenging nominations and commits responsibility for judicial review of D.C. elections to the D.C. Court of Appeals, not the federal courts. *See* D.C. Code § 1-1001.11; *cf. Best v. D.C. Bd. of Elections & Ethics*, 852 A.2d 915, 918 (D.C. Ct. App. 2004) (holding that the statutory authority of the D.C. Court of Appeals "extends to correcting any defect in the [electoral] process serious enough to vitiate the election

as a fair expression of the will of the voters.").[2] Nor has Plaintiff named the D.C. Board of Elections and Ethics or a political party seeking to nominate President Obama as its candidate as defendants in this lawsuit.

Under these circumstances, it would be inappropriate for the Court to try to save Plaintiff's improper future quo warranto claim by construing the claim as some alternative challenge to the President's appearance on the election ballot. As explained above, Plaintiff's claim seeking this form of relief should therefore be dismissed.

   B.   <u>Plaintiff has not suffered a concrete and particularized injury that would provide him with standing to challenge President Obama's eligibility to serve his current term in office.</u>

The question of standing is a threshold determination concerning "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Plaintiff bears "the burden of establishing [the] existence" of standing because federal courts should presume they lack jurisdiction "unless the contrary appears affirmatively from the record." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998); *Renne v. Geary*, 501 U.S. 312, 316 (1991). To demonstrate standing, Article III requires a litigant to have suffered "personal injury fairly traceable to the [] allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 750-52 (1984). The Supreme Court has "consistently stressed" that a plaintiff lacks standing unless he can

---

[2] Not that any such challenge would be likely to succeed. Numerous other jurisdictions have heard and rejected similar claims brought against President Obama in his personal capacity, state elections officials, or the Democratic Party to challenge the President's placement on 2012 election ballots. *See, e.g.*, *Farrar et al v. Obama*, OSAH-SecState-CE-1215136-60-Malihi (Feb. 3, 2012) (Ga. Ofc. Admin. Hearings) (President Obama is eligible to appear on the ballot as a natural born citizen); *Jackson v. Obama*, 12 SOEB GP 104 (Jan. 27, 2012) (ballot access challenge rejected because eligibility "clearly establish[ed]" by President Obama's birth certificate), objection overruled (Ill. State Bd. of Elections, Feb. 3, 2012); *Freeman v. Obama*, 12 SOEB GP 103 (Jan. 27, 2012) , objection overruled (Ill. State Board of Elections, Feb. 3, 2012) (same).

"establish that he has a 'personal stake' in the alleged dispute, and that the injury is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). And standing to litigate one claim does not confer standing to litigate others; rather, a plaintiff "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

   1. <u>Contrary to Plaintiff's arguments, members of the public lack the standing to challenge public officials using the quo warranto statute.</u>

   The rejection of numerous similar challenges to the qualifications of President Obama well establish that the purported injury suffered from doubting the President's eligibility for office is an injury to "the generalized interest of all citizens in Constitutional governance," and thus too abstract to satisfy the requirement of standing. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 220 (1974); *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011). If available to any member of the public, a quo warranto action to remove a public officeholder would vindicate only the interest of the public-at-large in the proper conduct of public officials and would therefore fail to satisfy this requirement. Thus, Plaintiff cannot successfully "maintain[] that he has standing" stemming from "the right, possessed by every citizen, to require that the Government be administered according to law."  *See* Amend. Compl. at ¶ 17. Plaintiff's similar contention that the writ of quo warranto was once "available to strangers unable to demonstrate personal injury" is a generalized claim for standing that does not meet Article III's requirements of a "personal stake" and a "particularized" injury. *Raines*, 521 U.S. at 819.

   Indeed, in dismissing a similar action in this Court challenging President Obama's eligibility, Chief Judge Lamberth explained that the well-established principle that "a quo

warranto action against a public official may be brought *only* by the Attorney General or the U.S. Attorney" is itself "rooted in the doctrine of standing."  *Taitz v. Obama*, 707 F. Supp. 2d at 3 (emphasis in original). Because "challenges to authority by which a public office is held 'involve a right belonging to the whole body of the public,'" and seek to vindicate an injury suffered equally by that whole body, only a "public representative" has the unique interest required to provide standing for such a challenge. *Id.* (*quoting United States v. Carmody*, 148 F.2d 684, 685 (D.C. Cir. 1945)). In keeping with the requirements for standing, the D.C. quo warranto provisions therefore give authority only to the Attorney General and the U.S. Attorney for the District of Columbia to institute quo warranto proceedings.[3] *See* D.C. Code § 16-3502.

    2.  <u>Plaintiff cannot demonstrate standing for a quo warranto challenge through a candidacy in a future election.</u>

As explained above, a proper quo warranto action is a challenge to the current tenure of an officeholder. Chief Judge Lamberth explained in *Taitz* that the plaintiff bringing such a challenge must be "actually entitled to the office" by virtue of his candidacy for office for the challenged term. *Taitz*, 707 F.Supp. 2d at n.1. Notwithstanding Plaintiff's status as "a declared write-in candidate" in the District of Columbia and his belief that this may net him sufficient votes in twenty-six states to secure 270 electoral votes, *see* Amend. Compl. at ¶¶ 6-7; *id.* at Ex. B, there is no allegation that Plaintiff is "actually entitled" to the office of the President at this

---

[3] As for Plaintiff's claim that the "Ninth and/or Tenth Amendments" permit him to supersede the role of the Attorney General and U.S. Attorney, there is "no basis for th[e] claim" that "the authority to act as a private attorney general is authorized pursuant to powers reserved under the Ninth and Tenth Amendments."  *Smith v. Anderson*, 2009 U.S. Dist. LEXIS 108220 at *6 (D. Col. 2009). These amendments reserve rights and powers to the states and to the people, respectively, *see* U.S. CONST. amend. IX; U.S. CONST. amend. X, and  cannot reasonably be read to enlarge the limited authority of the federal sovereign through its "courts of limited jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

time, and neither his current statement of candidacy nor the other allegations in his complaint provide any basis to believe that he has such an entitlement.

To be sure, the statutory quo warranto provision does provide a means for a private party to apply directly "to the court by certified petition for leave to have the [quo warranto] writ issued." § 16-3503. The text of the statute states that such a petitioner must be an "interested person," and it is that provision that the Court in *Taitz* found requires an "actual[] entitle[ment] to the office." *Taitz*, 707 F.Supp. 2d at n.1 (*discussing Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 547 (1915)). The *Taitz* opinion tied this requirement to the Supreme Court's opinion in *Newman*, which Judge Lamberth explained is "the one case that discusses the circumstances under which a private person might be able to challenge a public official's title to office." *Id.* Reviewing the previous D.C. quo warranto statute (the language of which is substantially identical to the statute now in force),[4] the *Newman* Court concluded that Congress

---

[4] The predecessor statute provided:

Sec. 1538. AGAINST WHOM ISSUED. — A quo warranto may be issued from the supreme court of the District in the name of the United States —
First. Against a person who usurps, intrudes into, or unlawfully holds or exercises within the District a franchise or public office, civil or military, or an office in any domestic corporation.
Second. Against any one or more persons who act as a corporation within the District without being duly authorized, or exercise within the District any corporate rights, privileges, or franchises not granted them by the laws in force in said District. And said proceedings shall be deemed a civil action.
Sec. 1539. WHO MAY INSTITUTE. — The Attorney General or the district attorney may institute such proceeding on his own motion, or on the relation of a third person. But such writ shall not be issued on the relation of a third person, except by leave of the court, to be applied for by the relator, by a petition duly verified, setting forth the grounds of the application, or until the relator shall file a bond with sufficient surety, to be approved by the clerk of the court, in such penalty as the court may prescribe, conditioned for the payment by him of all costs incurred in the prosecution of the writ in case the same shall not be recovered from and paid by the defendant.
Sec. 1540. IF ATTORNEY GENERAL AND DISTRICT ATTORNEY REFUSE. — If the Attorney General and district attorney shall refuse to institute such proceeding on the request of a person interested, such person may apply to the court by verified petition for leave to have said writ issued, and if in the opinion of the court the reasons set forth in

used the words "interested person" to ensure that the "interest which will justify such a proceeding by a private individual must be more than that of another taxpayer. It must be 'an interest in the office itself, and must be peculiar to the applicant." *Newman*, 238 U.S. at 550. This interest can only be satisfied by a challenger who sought the office at the time as the current officeholder: a speculative possibility of future electoral success is not "peculiar" to Plaintiff because it would be equally available to anyone announcing their intention to run for office in the future.[5]

For these reasons, then, Plaintiff's request for a writ "ousting" the President from office must therefore meet the same fate as the claim of the plaintiff in *Taitz*: "Because [Plaintiff] is neither the Attorney General of the United States nor the United States Attorney for the District of Columbia, [he] does not have standing to bring a quo warranto action challenging a public official's right to hold office." *Taitz*, 707 F. Supp. 2d at 4.

C.  Plaintiff may not use the vehicle of quo warranto to challenge the title of President of the United States.

Plaintiff's claim seeking the removal of the President from office is also constitutionally inform because granting Plaintiff the relief he seeks would require this Court to issue an order removing the President from office.  Any such order would necessarily take the form of an injunction running against the President and would transgress the separation of powers explicitly set forth in the Constitution. For this reason, Plaintiff's quo warranto claims are nonjusticiable.

---

said petition are sufficient in law, the said writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of said interested person, on his compliance with the condition prescribed in the last section as to security for costs.

D.C. Code Ch. LI, Quo Warranto, §§ 1538-40 (1911).

[5] This limitation is plainly rooted in Article III standing because any injury Plaintiff may suffer in the upcoming election remains "conjectural" or "hypothetical," rather than "actual" and "imminent." *DaimlerChrysler*, 547 U.S. at 334-35.

*See Barnett v. Obama*, 2009 U.S. Dist. LEXIS 101206 at \*40-\*49 (C.D. Cal. 2009), aff'd on other grounds*, Drake*, 664 F.3d 774.

It is well-established that "where there is 'a textually demonstrable constitutional commitment of [an] issue to a coordinate political department' . . . a court lacks the authority to decide the dispute before it." *Zivotovsky v. Clinton*, No. 10-699,  slip op. at 6-7, 566 U.S. \_\_\_\_ (Mar. 26, 2012) (*quoting Nixon v. United States*, 506 U. S. 224, 228 (1993); *Baker v. Carr*, 369 U. S. 186, 217 (1962)). Because quo warranto claims against the President challenge a governmental action precisely so committed, "no writ of quo warranto can issue from [the district courts] to try the title to the office of President." 3 Roger Foster, A Treatise on Federal Practice § 468a (6th ed. 1921);  *see Barnett*, 2009 U.S. Dist. LEXIS 101206 at \*40-\*47 (C.D. Cal. 2009); *Kerchner*, 669 F. Supp. 2d 477, n.5.

In Article II, Section 1, as amended by the Twelfth Amendment and the Twentieth Amendment, the Constitution assigns the responsibility for selection of the President to the Electoral College. *See* U.S. CONST. art. II, § 1, as amended. Section 3 of the Twentieth Amendment further provides for a situation in which "the President elect shall have failed to qualify," the set of conditions which Plaintiff alleges have been met here, making clear that "the Vice President elect shall act as President until a President shall have qualified." U.S. CONST., amend. XX, § 3.  "None of these provisions evince an intention for judicial reviewability" of the decisions by the coordinate branches, and so Plaintiff's challenge to the President's eligibility for office is nonjusticiable. *Kerchner* 669 F. Supp. 2d 477 at n.5.

The power to remove the President from office is likewise committed to coordinate branches of government. The Constitution provides for the President to be removed from office

11

through impeachment, with the "sole power" to impeach reserved to the House of

Representatives and the "sole power" of trial committed to the Senate. U.S. CONST. Art. I, § 2,

cl. 5; *id.* at § 3, cl. 6; *id.* at art. II, § 4. *See also Nixon v. United States*, 506 U.S. 224, 231-37

(1993) (concluding that the import of the word "sole" is to place impeachment beyond the power

of judicial review). The Twenty-Fifth Amendment further describes a procedure by which the

Vice President, with the cooperation of other federal officers, may identify to Congress a

presidential infirmity and then exercise the power to "act as President." *Id.* at amend. XXV.

These clear textual commitments of the authority that Plaintiff seeks to have this Court exercise

demonstrate that his claims are not justiciable. Rather, "any removal . . . from the presidency

must be accomplished through the Constitution's mechanisms." *Barnett*, 2009 U.S. Dist. LEXIS

101206 at *48.

**II.     Plaintiff's claims for writs of mandamus against the United States Attorney
          and the Attorney General must be dismissed**.

Plaintiff brings two claims for mandamus-type relief: a request that the Court require the

U.S. Attorney and the Attorney General to bring a quo warranto action pursuant to Plaintiff's

instructions; and a request that the Court command the U.S. Attorney to present certain evidence

to a grand jury pursuant to 18 U.S.C. § 1332. Although the Federal Rules of Civil Procedure

"long ago abolished the writ of mandamus in the district courts," *In re Cheney*, 406 F. 3d 723,

728-29 (D.C. Cir 2005); *see* Fed. R. Civ. P. 81(b), Defendants afford Plaintiff the benefit of the

doubt and choose to address these claims as if they were brought pursuant to 28 U.S.C. § 1361,

which grants the district courts "jurisdiction of any action in the nature of mandamus to compel

an officer or employee of the United States or any agency thereof to perform a duty owed to the

plaintiff." 28 U. S. C. § 1361. Viewed in this light, Plaintiff's mandamus claim related to Defendants' prosecutorial authority must be dismissed because he lacks the required standing to support it and his mandamus claim related to quo warranto must be dismissed because he improperly seeks to compel exercise of discretionary authority.

    A.  Plaintiff's mandamus claims related to quo warranto are barred because this discretionary function is not the proper subject of mandamus.

Mandamus cannot be used to override discretionary authority. "[B]ecause of the potential conflict between the branches of government engendered by use of this remedy," mandamus will issue only in exceptional cases where the duty is "indisputable" and "ministerial." *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). In this case, the official decision of whether to bring a quo warranto action is entirely discretionary and therefore cannot be compelled through mandamus.

The text of the quo warranto statute on which Plaintiff relies explicitly sets forth Defendants' responsibilities in discretionary terms: the Attorney General or U.S. Attorney "*may* institute a proceeding" or may "*refuse*[] to institute a proceeding." D.C. Code § 16-3501 *et seq* (emphasis added). Not surprisingly, in *Andrade v. Lauer*, the Court of Appeals considered this language and concluded that the decision to bring a quo warranto action is anything but ministerial, stating that the U.S. Attorney and the Attorney General "have broad discretion — especially in cases involving public officials, as opposed to corporate officers — to refuse to sue." 729 F. 2d 1475 (D.C. Cir. 1984) (*citing United States ex rel. Noel v. Carmody*, 148 F.2d at 685; *Application of James*, 241 F.Supp. at 860). Because quo warranto is an inescapably discretionary function, it may not be compelled under the Mandamus Act. *See Columbian Cat*

*Fanciers v. Koehne*,  96 F.2d 529, 532 (D.C. Cir. 1938) (under the predecessor quo warranto

statute, "institution of a suit in quo warranto" law "within the *discretion* of the Attorney General

or of the District Attorney") (emphasis added).[6]

      B.  <u>Plaintiff lacks standing to seek a writ of mandamus under 18 U.S.C. § 3332</u>.

      Section 3332, a provision of the Organized Crime Control Act of 1970, provides as

follows:

> It shall be the duty of each such grand jury impaneled within any judicial district
> to inquire into offenses against the criminal laws of the United States alleged to
> have been committed within that district. Such alleged offenses may be brought to
> the attention of the grand jury by the court or by any attorney appearing on behalf
> of the United States for the presentation of evidence. Any such attorney receiving
> information concerning such an alleged offense from any other person shall, if
> requested by such other person, inform the grand jury of such alleged offense, the
> identity of such other person, and such attorney's action or recommendation.

18 U.S.C. § 3332(a).

Plaintiff relies on this section as the basis for his claim that he may seek mandamus to compel

the United States Attorney to present his allegations to a grand jury. *See* Amend. Compl. at ¶¶

12-13, 16.[7] Plaintiff's claim fails because Section 3332 does not confer standing on private

individuals to enforce its terms.

      Plaintiff's interest in the enforcement of the law is no more than "the right, possessed by

---

[6] In addition, for the reasons explained *supra* Part I.C., the quo warranto action Plaintiff requests that Defendants bring is one that seeks relief that would undermine the separation of powers. Defendants are therefore well within their discretion to decline to institute such an action

[7] In addition, a core principle of the separation of powers has long been "the deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005). It is therefore doubtful that a prosecutorial decision can be ministerial within the requirements for mandamus under 28 U.S.C. § 1361. The frequent recycling in state and federal court actions of the conspiracy theory underlying Plaintiff's claims underscores the value of prosecutorial discretion. Several years ago, Judge Robertson of this Court observed that versions of Plaintiff's theory were "raised, vetted, blogged, texted, twittered, and otherwise massaged by America's vigilant citizenry" during the last presidential campaign. *Hollister v. Soetoro*, 601 F. Supp. 2d 179, 180 (D.D.C. 2009). Yet private litigants like Plaintiff continue to petition Defendants and this Court to consider such claims. A replacement of prosecutorial discretion in such circumstances would have virtually limitless potential for abuse.

every citizen, to require that the Government be administered according to law," and is not sufficient to confer standing pursuant to Article III. *See Raines*, 521 U.S. at 819. It is well-established that the interest in prosecution of another person is not a particularized interest sufficient to support standing. *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973). To be sure, Section 3332 provides a role for Plaintiff to play, stating that as an "other person," he may . request" that the U.S. Attorney "inform the grand jury of [an] alleged offense." 18 U.S.C. § 3332(a), *supra*. As the Court of Appeals has explained, however, that "the giving of information is at most of indirect benefit to the giver," and so Section 1332's mention of the role of an informant role falls short of creating an interest "legally cognizable within the framework of Article III." *Sargeant v. Dixon*, 130 F.3d 1067, 1069-70 (D.C. Cir. 1997); *see also Banks v. Buchanan*, 336 Fed. Appx. 122, 123-24 (3d Cir. 2009) (individual reporting wrongdoing "lacks standing to compel the presentation of evidence under 18 U.S.C. § 3332").

Numerous district courts and courts of appeals have adopted the D.C. Circuit's reasoning in *Sargeant* and rejected petitions for writs of mandamus purportedly grounded under section 3332, finding that such litigants lack standing to compel officers of the United States to present evidence to a grand jury or, in fact, to demand "a grand jury investigation of another, the prosecution of others or the enforcement of criminal laws." *Eagle Fin. Serv. v. C.I.P. Venture Group, LLC*, CA No. 07-800, 2007 U.S. Dist. LEXIS 35268, at *9 (S.D. Cal. May 14, 2007); *see Arnett v. Unknown*, 2011 U.S. Dist. LEXIS 105210  (C.D. Cal. Aug. 23, 2011);  *Baranoski v. United States Attorney's Office*, No. 06-3151, 2007 U.S. App. LEXIS 2454, at **3-4 (3d Cir. Feb. 2, 2007); *Wagner v. Wainstein*, No. 06-5052, 2006 U.S. App. LEXIS 16026, at *2 (D.C. Cir. June 22, 2006), cert. denied,127 S.Ct. Oct. 2, 2006); *Silvers v. Welsh*, 1994 U.S. App.

LEXIS 14317, at **2-3 (4th Cir. June 10, 1994); *Lundy v. United States*, 2007 U.S. Dist. LEXIS 93739, at **4-6 (C.D. Ill. Dec. 21, 2007); *Edwards v. Samuels*, , 2007 U.S. Dist. LEXIS 1325, at *3 n.2 (D. N.J. Jan. 8, 2007). Plaintiff therefore "lacks standing to compel presentation of his evidence to a grand jury under 18 U.S.C. § 3332(a)." *Andrews v. Suter*, 2008 U.S. App. LEXIS 4934 (D.C. Cir. 2008).

### III. The remaining counts of Plaintiff's complaint fail to describe a cognizable deprivation of constitutional rights.

1. Plaintiff has no right to communicate directly with a federal grand jury.

Plaintiff is fully aware that his claim of a right to present allegations of wrongdoing directly to the grand jury is foreclosed by controlling precedent as well as by the laws he challenges as unconstitutional. *See* Amend. Compl. at ¶ 34 (observing that "in this Circuit by judicial fiat, 'presentments' have been abolished," and citing *Gaither v. United States*, 413 F.2d 1061, 1065 (D.C. Cir. 1969)). To Plaintiff's citation, Defendants add only that the rule that "an individual cannot bring accusations before a grand jury unless invited to do so by the prosecutor or the grand jury," *In re Application of Wood*, 833 F.2d 113, 116 (8th Cir. 1987), is well-established in the other judicial circuits as well. *See, e.g.*, *In re New Haven Grand Jury*, 604 F. Supp. 453, 460 (D. Conn. 1985) ("[T]he commencement of a federal criminal case by submission of evidence to a grand jury is 'an executive function within the exclusive prerogative of the Attorney General.'") (citing *In re Persico*, 522 F.2d 41, 54-55 (2d Cir. 1975); *United States v. Kilpatrick*, 16 F. 765, 769, 771 (W.D.N.C. 1883) ("no right to communicate private information to a grand jury for the purpose of obtaining a presentment"); *Confiscation Cases*, 74 U.S. 454, 457 (1868) (exclusive control of criminal litigation by appropriate federal officers is

the "settled rule"); *Baranoski v. United States Att'y Office*, 2006 U.S. Dist. LEXIS 2240 at *9 (D.N.J. 2006) ("Federal courts have consistently held that private individuals do not maintain a constitutional, statutory or common law right to communicate with a federal grand jury without the approval or participation of a prosecutor or judge.").

In rejecting a recent First and Fifth Amendment challenge to the prohibitions on individual communications with a federal grand jury, the United States District Court for the District of New Jersey explored the justification for the prohibition, explaining that the grand jury's independence:

> is designed to "afford a safeguard against oppressive actions of the prosecutor or court," not to allow individuals to present to a grand jury independently of the government prosecutor. *Gaither v. United States*, 413 F.2d 1061, 1066 (D.C. Cir. 1969). The constitutional role of the grand jury is to serve as "a check on prosecutorial power, not a substitute for the prosecutor." *In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F.Supp. 1451, 1462 (D.Colo. 1992)….

> While the grand jury serves a dual purpose, acting as "both a sword and a shield of justice - a sword because it is the terror of criminals, [and] a shield because it is the protection of the innocent against unjust prosecution," the grand jury "earned its place in the Bill of Rights by its shield, not by its sword." *Cox*, 342 F.2d. at 186 (Wisdom, J., concurring); *see also* Brenner & Lockhart, 2 Fed. Grand Jury: A Guide to Law and Practice, §2.2 ("The clause [(of the Fifth Amendment)] was intended to preserve a shield against unwarranted prosecution.") Under the Fifth Amendment, the grand jury affords constitutional protections to preserve the rights of the accused. There is, however, no corresponding constitutional right for individuals to use the power of a grand jury to levy criminal accusations. *See United States v. Cox*, 342 F.2d 167, 186 (5th Cir. 1965) (Wisdom, J., concurring) (noting that when the role of a grand jury "goes beyond inquiry and report and becomes accusatorial, no aura of traditional or constitutional sanctity surrounds the grand jury"). Accordingly, the Petitioners cannot claim a constitutional prerogative that would allow them to independently bring criminal charges and accusations before a federal grand jury.
> *In re Appearance of Carl J. Mayer*, 2006 U.S. Dist. LEXIS 228 (Jan. 4, 2006) (internal citations and quotations simplified).

17

The *Mayer* court also explained:

> Giving individuals direct access to the grand jury and removing the
> governmental prosecuting authorities from the process would undermine the
> prosecutor's screening authority and almost certainly increase the likelihood
> that wrongful indictments would be returned, thereby undermining the very
> rights of the accused that the Fifth Amendment seeks to protect.
> *Id.* at n.3 (internal citations and quotations omitted).

For these reasons, Plaintiff does not have a constitutional right to bring allegations of

wrongdoing before the grand jury.

> 2. Plaintiff has not described an actionable violation of his constitutional rights by the
>    United States Marshals Service and its agents.

To demonstrate standing to support a claimed violation of the right to access courts,

Plaintiff must once again allege an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

To do so, he must demonstrate that Defendants "hindered his efforts to pursue a legal claim," *id.*,

or make a showing that his "right of access to the courts was chilled." *Washington v. James*, 782

F.2d 1134, 1139 (2nd Cir. 1986). Yet by Plaintiff's own account, after being "informed" that he

was "required to have a U.S. Marshal escort," Plaintiff traveled "to and from the Clerk's office,"

– presumably to complete the task which he visited the courthouse to perform – then "left the

building." Amend. Compl. at ¶ 9. Plaintiff's complaint also omits any mention of a subsequent

legal action which he did not perform because of the purported requirement that he "have a U.S.

Marshal escort" while conducting business in the courthouse. *Id.* at ¶¶ 9-10, ¶¶ 36-39. Indeed,

Plaintiff's filing of the instant complaint – suing not only the United States Marshals Service but

the chief officer in charge of the entire executive branch of government – strongly suggests that

his access to court has been neither "hindered" nor "chilled." Plaintiff therefore has not

demonstrated that he has the injury necessary to support standing for this claim.

Nor has Plaintiff pleaded any facts to suggest that the U.S. Marshals Service or the John Doe Deputy Marshals that he names as Defendants overstepped their authority. It is well-established that under the Attorney General's general federal law enforcement authority, the United States Marshals Service has been delegated the responsibility to maintain the security of federal courthouses. *See In Re Neagle*, 135 U.S. 1 (1890) (protection of federal judge). Pursuant to guidelines issued for courthouse security, the U.S. Marshals Service may legitimately impose restrictions on members of the public when they seek to enter the courthouse where security dictates. *See Klarfeld v. United States*, 944 F.2d 583 (9th Cir. 1992); *United States v. Heldt*, 668 F.2d 1238, 1273-74 (D.C. Cir. 1981); *United States v. Whitehorn*, 710 F. Supp. 803, 831-41 (D.D.C.), rev'd on other grounds, 888 F.2d 1406 (D.C. Cir. 1989)'. *See also United States v. Carter*, 717 F.2d 1216 (8th Cir. 1983) (U.S. Marshal's handling of protesters at courthouse); *United States v. Sachs*, 679 F.2d 1015 (1st Cir. 1982) (court upheld marshals' actions in excluding individual from courthouse who had no legitimate reason for being there); *Mazzetti v. United States*, 518 F.2d 781 (10th Cir. 1975) (arrest of photographer in prohibited area of courthouse). Thus, the Marshals Service is clearly authorized to enforce federal law by maintaining security at the entrances to and within federal property.

Because Plaintiff has not suffered an "actual injury" resulting from the conduct of the U.S. Marshals Service or the John Doe U.S. Marshals and has alleged no facts that suggest these Defendants overstepped their lawful authority, Plaintiff's claims as to these Defendants should be dismissed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's complaint should be dismissed in its entirety.


Dated: April 2, 2012

.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Eric J. Soskin*
ERIC J. SOSKIN (PA Bar # 200663)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW,
Washington, D.C. 20001
Room 5134
eric.soskin@usdoj.gov
Tel: (202) 353-0533
Fax: (202) 616-8202
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I certify that a copy of this motion has been served electronically on Plaintiff, Montgomery Blair Sibley, on April 2, 2012. Pursuant to Fed. R. Civ. P. 5(b)(2)(E), Mr. Sibley has consented to receive service by electronic means.

Mr. Sibley has been served at the following address:
mbsibley@gmail.com

/s/ Eric J. Soskin
ERIC J. SOSKIN
Trial Attorney
