UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *EX RELATOR*,
MONTGOMERY BLAIR SIBLEY, *ET AL.*,

CASE NO.: 12-cv-00001 (JDB)

PETITIONER/PLAINTIFF,

**SIBLEY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

VS.

**AND**

BARACK HUSSEIN OBAMA, II, *ET AL.*,

**SIBLEY'S REQUEST FOR ORAL ARGUMENT**

RESPONDENTS/DEFENDANTS.

_____/

Petitioner/Plaintiff, Montgomery Blair Sibley ("Sibley"), responds[1] to Defendants' Motion

to Dismiss the First Amended Complaint, and states as follows:

## I.   INTRODUCTION

To grant the Defendants' Motion to Dismiss is to essentially eviscerate a vast part of the

vision voted by the People when they ordained and established the Constitution for the United States

of America.  To grant that motion to dismiss, this Court must put its signature to the following

statements of law urged by the Defendants to this Court:

---

[1]   As a result of the Court's Minute Order of April 11, 2012, Sibley has severely truncated his instant Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the First Amended Complaint.  In particular, Sibley has been forced by the Court's April 11, 2012, Minute Order to largely abandon due to page size constraints his analysis of the forty-five (45) cases cited by the Defendants in support of their motion to dismiss which are demonstrably <u>not</u> on point or are clearly distinguishable.  As such, Sibley believes that he is being denied the fundamental requisite of due process of law which is the opportunity to be heard. *Louisville & N. R. Co. v. Schmidt*, 177 U.S. 230, 236 (1900).  Here, by receiving the Defendants' motion to dismiss with their forty-five (45) cited cases and denying to Sibley the right to argue the inapplicability of those cases, this Court is not "hearing" Sibley but instead is engaging in *de facto ex parte* communication with the Defendants by only hearing their side of the argument.

1



RECEIVED
Mail Room

APR 1 3 2012

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

- The Article II, §1 legal term-of-art "natural born Citizen" is rendered meaningless as no court will define it thus creating a new way to amend the Constitution – refuse to enforce it's plain terms;

- Access to Court to redress grievances is only the grace of the Court rendering justice discretionary, an oxymoron;

- The People's retain and reserved rights and powers can be eliminated by procedurally rendering them unavailable;

- The Executive can ignore a plainly placed duty imposed by both the First Amendment and Congress to allow access to the Grand Jury thus insulating the Executive from the Grand Jury's scrutiny;

- The Grand Jury's oversight function can be *de facto* destroyed by quarantining the Grand Jury from all but what the Executive wants it to hear;

- The court's own Praetorian Guard can – at apparently the court's direction – intimidate petitioners to the court without fear of consequence.

If this is indeed the new "rule of law" in this Country, then this Court must sign its order of dismissal thereby exhibiting the government's "teeth" towards it People for them to see and, perchance, to respond.

## II.   SIBLEY IS ENTITLED TO A JURY TRIAL ON ALL ISSUES OF FACT AND LAW

Sibley maintains that it is for the Jury – and not the Court – to act as the final arbiter of <u>all</u> questions of fact and law raised by the parties.  As such, Defendants' motion to dismiss must be denied for it invites this Court to improperly invade the province of the Jury

In the criminal context, the right of a criminal defendant to argue both the law and the facts to a Jury – the improperly and pejoratively-named "Jury nullification" argument – is well-

2

established. As early as 1836 in this Circuit the Court held: "In criminal cases, the Jury has a right to give a general verdict, and, in doing so, must, of necessity, decide upon the law as well as upon the facts of the case." *United States v. Fenwick*, 25 F. Cas. 1062; 4 Cranch C.C. 675 (1836).

In modern times, that same right was affirmed in *United States v. Dougherty*, 473 F.2d 1113 (D.C. Cir. 1972), where the United States Court of Appeals for the District of Columbia Circuit affirming the *de facto* power of a Jury to nullify the law stated: "The existence of an unreviewable and unreversible power in the Jury, to acquit in disregard of the instructions on the law given by the trial judge, has for many years co-existed with legal practice and precedent upholding instructions to the Jury that they are required to follow the instructions of the court on all matters of law." *Id.* at 1132.

Less well established – but nonetheless as secured – is the same right of the Jury to determine both law and fact in the civil trial context.

Prior to the ratification of the first ten amendments to the Constitution, several eminent American lawyers and statesmen famously contended that juries had the right - not just the power - to decide the law as well as the facts in civil cases as well as criminal.[2] Most significantly, in a civil case in which the State of Georgia brought a <u>civil</u> sequestration action to recover debts originally due to defendants, United States Supreme Court Chief Justice John Jay gave the following Jury instruction on behalf of the Court sitting *nisi prius*:

> It may not be amiss, here, Gentlemen, to remind you of the good old
> rule, that on questions of fact, it is the province of the jury, on

---

[2]     *See:* Renee B. Lettow, *New Trial for Verdict Against Law: Judge-Jury Relations in Early Nineteenth-Century America*, 71 Notre Dame L. Rev. 505, 517 (1996); *see also* William E. Nelson, *The Eighteenth-Century Background of John Marshall's Constitutional Jurisprudence*, 76 Mich. L. Rev. 893, 904-17.

questions of law, it is the province of the court to decide. But it must be observed by the same law, which recognizes this reasonable distribution of jurisdiction, **you have nevertheless a right to take upon yourselves to judge of both, and to determine the law as well as the fact in controversy.** (Emphasis added)

*Georgia v. Brailsford*, 3 U.S. (3 Dall.) 1, 4 (1794). *See also: Bingham v. Cabbot*, 3 U.S. (3 Dall.) 19, 33 (1795) (Iredell, J.)(explaining in another civil case that, "though the jury will generally respect the sentiments of the court on points of law, they are not bound to deliver a verdict conformably to them".) *Accord*: Lysander Spooner, *An Essay on the Trial By Jury* 112 (1852)("Nearly the same oppressions can be practised in civil suits as in criminal ones... . If the laws of the king were imperative upon a jury in civil suits, the king might enact laws giving one man's property to another ... and authorizing civil suits to obtain possession of it.").

That tradition of residing the determination of both law and fact in the Civil Jury context – notwithstanding the admitted drift from that tradition now found in Rules 12(b)(1) & (6) – <u>must</u> be respected and recognized by this Court. "The inconveniences of jury trial were accepted precisely because in important instances, through its ability to disregard substantive rules of law, the [civil] jury would reach a result that the judge either could not or would not reach." Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 670-671 (1973); Akhil Reed Amar, *The Bill of Rights as a Constitution*, 100 Yale L.J. 1131, 1183-85 (1991)("Spanning both civil and criminal proceedings, the key role of the jury was to protect ordinary individuals against governmental overreaching. . . .Ordinary Citizens would check executive overreaching and monitor the professional judiciary.")

In the instant case, this Court may <u>not</u> do violence to this long-established, fundamental tradition of the Jury's duty by summarily determining the law raised by Defendants under Rules

4

12(b)(1) & (6) seeking to have this Court determine and then dismiss the Amended Complaint. To do so would usurp the Constitutionally and common law placement of that power in the hands of the Jury.

Moreover, as it relates to Sibley's *quo warranto* claims, both the factual and legal determination is indisputably the province of the Jury. In the seminal *quo warranto* case of *Newman v. United States ex Rel. Frizzell*, 238 U.S. 537 (1915), the trial court submitted the case to a Jury for determination. "The cause was remanded to the supreme court of the District of Columbia, and came on for trial before a jury. A verdict was returned finding defendant guilty of the act of usurping the office of commissioner." *Newman v. United States ex Rel. Frizzell,* 43 App. D.C. 53; 1915 U.S. App. LEXIS 2570 (App. D.C. 1915). Upon the determination by the Jury that Frizzell had only the "interest" of any other citizen, the Supreme Court ultimately determined that Frizzell could not pursue the claim as not qualifying as an "interested person" as required by 16 D.C. Code §3503. "But if the established facts show that, as a matter of law he was not an 'interested person' the court had no authority to grant him permission to use the name of the Government and the case must be dismissed." *Newman v. United States ex Rel. Frizzell*, 238 U.S. 537, 547 (1915).

Notwithstanding the Supreme Court's plain and unchallenged usurpation of the Jury's prerogative to determine both the facts and the law in *Newman*, Sibley maintains, based upon the foregoing, that it is solely for the Jury – not this Court – to determine both the facts and the law as to whether Sibley is an "interested person" and Defendant Barack Hussein Obama, II, ("Obama") should be ousted. To allow the Court alone to make that determination, brings Lysander Spooner above-cited prediction to fruition: A President who is demonstrably not eligible cannot be challenged for the only one the "King" allows to challenge his authority are those who the "King" appoints.

Most certainly, the Framers of the Constitution had <u>no</u> such perverse result in mind when they framed that document.

WHEREFORE, Sibley demands that a Jury determine all the issues so triable and leave to the Jury the determination of all questions of law and fact raised in First Amended Complaint.

### III.   DEFENDANT OBAMA HAS RAISED THE ISSUE OF THE MEANING OF THE LEGAL-TERM-OF-ART "NATURAL BORN CITIZEN" FOR THIS COURT'S DETERMINATION

Obama commences his motion to dismiss by arguing to the Court that: "The federal and state courts, including, on at least two occasions, the United States District Court for the District of Columbia, have previously rejected these challenges on both procedural grounds and the merits. . . .as with the other claims challenging President Obama's eligibility for office, this action should be dismissed in its entirety." (Def. Motion to Dismiss, p. 1-2). By raising the "merit" argument, to wit, that Obama qualifies as a "natural born Citizen" as required by Article II, §1, Obama has converted in part his Rule 12(b)(6) motion to a motion for partial summary judgment on that issue.[3]

Significantly, Obama has obfuscated the extent to which there has been a "merit" determination of the meaning of the term "natural born Citizen". Among the seven cases Obama cites in support of his proposition that he is a "natural born Citizen", <u>only</u> two specifically address that question. The remaining five cited cases were dismissed on "standing" grounds <u>before</u> the "natural born Citizen" issue was determined.

First, in *Tisdale v. Obama*, No. 3:12-cv-00036 (E.D. Va. Jan. 23, 2012) the court held "It is well settled that those born in the United States are considered natural born citizens". In fact, what

---

[3]   F.R.C.P. 12(d) "Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

the court in *Tisdale* really opined was:

> It is well settled that those born in the United States are considered natural born citizens See, e.g., *United States v. Ark*, 169 U.S. 649, 702 (1898)("Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States."); *Perkis v. Elg*, 99 F.2d 408, 409 (1938). Moreover, "those born in the United States, and subject to the jurisdiction thereof, ... have been considered American citizens under American law in effect since the time of the founding ... and thus eligible for the presidency. *Hollander v. McCain*, 566 F. Supp. 2d 63, 66 (D.N.H 2008).

Of course whether Obama is a "citizen" of the United States is of no moment to the question of whether he is eligible to be President as the Constitution requires that in the in order to be eligible to be President a "citizen" must be something more; to wit, a "natural born Citizen". Thus Obama's citation to *United States v. Ark* and *Perkis v. Elg* are plainly inapposite as those cases only address the "citizenship" question. As to *Hollander*, the district court <u>never</u> determined the eligibility question, instead holding <u>only</u> that "For the foregoing reasons, the defendants' motion to dismiss is granted on the ground that Hollander lacks standing." *Id*. at 71. Thus for the *Tisdale* court to claim that *Hollander* states: "Moreover, those born in the United States, and subject to the jurisdiction thereof, ... have been considered American citizens under American law in effect since the time of the founding ... and thus eligible for the presidency" is intellectually <u>dishonest</u>. What the *Hollander* court in fact said was: "Those born 'in the United States, and subject to the jurisdiction thereof,' U.S. Const., amend. XIV, have been considered American citizens under American law in effect since the time of the founding, *United States v. Wong Kim Ark*, 169 U.S. 649, 674-75, (1898), and thus eligible for the presidency, *see, e.g., Schneider v. Rusk*, 377 U.S. 163, 165 (1964) (dicta)."

Yet what the *dicta* in *Schneider* held was just the <u>opposite</u>: "We start from the premise that the rights of citizenship of the native born and of the naturalized person are of the same dignity and

are coextensive. The only difference drawn by the Constitution is that only the 'natural born' citizen

is eligible to be President. Art. II, § 1." *Id.* at 165.  Thus, for the *Tisdale* court to claim that the

*Hollander* court was holding that any "citizen" could be President, ignores the plain holding of

*Schneider* to the contrary.

Second, Obama cites an intermediate Indiana state appellate court case, *Ankeny v. Governor*

*of Ind.*, 916 N.E.2d 678 (Ind. Ct. App. 2009), *transfer denied,* 929 N.E.2d 789 (Ind. 2010), for the

proposition that "persons born within the borders of the United States are 'natural born Citizens' for

Article II, Section 1 purposes, regardless of the citizenship of their parents".  Putting aside the

complete lack of binding precedent that an intermediate state court decision represents, the *Ankeny*

decision is intellectually deficient.  What the court in *Ankeny* concluded was: "Based upon the

language of Article II, Section 1, Clause 4 and the guidance provided by *Wong Kim Ark*, we conclude

that persons born within the borders of the United States are 'natural born Citizens' for Article II,

Section 1 purposes, regardless of the citizenship of their parents. Just as a person 'born within the

British dominions [was] a natural-born British subject' at the time of the framing of the U.S.

Constitution, so too were those 'born in the allegiance of the United States [] natural-born citizens.'"

*Id.* at 688.

Importantly, the *Ankeny* court then went on to admit that it <u>ignored</u> 18th and 19th century

authority cited to the it regarding the meaning of the phrase "natural born Citizen":

> The Plaintiffs do not mention the above United States Supreme Court
> authority in their complaint or brief; they primarily rely instead on an
> eighteenth century treatise and quotations of Members of Congress
> made during the nineteenth century. To the extent that these
> authorities conflict with the United States Supreme Court's
> interpretation of what  it means to be a natural born citizen, we
> believe that the Plaintiffs' arguments fall under the category of

8

> 'conclusory, non-factual assertions or legal conclusions' that we need not accept as true when reviewing the grant of a motion to dismiss for failure to state a claim.

*Id.* at 689. Thus it is the seminal question as to whether those cited-but-ignored authorities indeed "conflict" with the Supreme Court holding in *Wong Kim Ark* and indeed whether *Wong Kim Ark* can be read to conflate "citizen" and "natural born Citizen". As demonstrated below, they most certainly can not be so conflated and thus the opinion of the court in *Ankeny* is due to be ignored. Moreover, based upon these authorities and the undeniable fact that Obama's father was not a United States citizen, Sibley is entitled to partial summary judgment on his *quo warranto* claims.

## A.   "NATURAL BORN CITIZEN", *MINOR V. HAPPERSETT & WONG KIM ARK*

Solely for purposes of this rule-created motion for partial summary judgment, it is assumed that Obama was born in the State of Hawaii, on August 4, 1961 to Stanley Ann Dunham, a natural-born citizen of the United States, who was eighteen years old when Obama was born and Barrack Hussein Obama, a British subject admitted into the United States on a temporary student visa, with the express condition that he was a "non-immigrant student". Obama's father never became a U.S. citizen; never applied for U.S. citizenship; never declared an intention to become a U.S. citizen; never became a resident alien; and was never domiciled in the United States.

Accordingly, Obama is not a "natural-born Citizen" of the United States, as defined by the United States Supreme Court in *Minor v. Happersett*, 88 U.S. 162 (1874), wherein the Court identified, as "natural-born Citizen" only those who are born in the United States of citizen parents. That the holding in *Minor v. Happersett* was applicable only to persons born in the country of two citizen parents was confirmed in *U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898), where the Court

9

approvingly reiterated the exact passage from *Minor* that defined the "natural-born Citizen" class, not modifying it, or questioning it all. Since the Supreme Court, in *Minor v. Happersett*, directly construed the Art. 2, §1, "natural-born Citizen" clause, to determine the citizenship status of the petitioner, the Court's definition of the "natural born Citizen" class is binding precedent on this Court. Additionally, the English common law term, "natural-born subject", as applied in *Ankeny*, being a uniquely spiritual designation, was <u>only</u> granted to members of the Christian faith, and cannot govern the definition of "natural born Citizen", because such a construction would be repugnant to the First Amendment of the United States Constitution.

As such, since Obama does <u>not</u> qualify as a member of the class of persons identified as natural-born citizens by the U.S. Supreme Court, he is <u>not</u> eligible to be President of the United States; therefore, Sibley's petition for *quo warranto* should be granted *actus curiae neminem gravabit.*

> 1. ***Minor v. Happersett***

The only Supreme Court decision which has directly construed the natural-born citizen clause from Art. 2, §1, is *Minor v. Happersett*, 88 U.S. 162 (1874). In that case, Virginia Minor petitioned the court to determine whether women were equal citizens to men, and further argued that if she was a citizen, her right to vote was protected by the 14th Amendment, which she also claimed made her a citizen. The Court's unanimous decision declined to construe the 14th Amendment's citizenship clause. Instead, the Court held that Minor was a citizen prior to the adoption of the 14th Amendment.

The Court established her citizenship by defining the word "citizen", and then identifying the class of "natural-born Citizens" to which she belonged. The Court's holding was that "natural-born Citizens" were citizens at birth who do not require the 14th Amendment to establish their

membership in the nation. The Court also noted that persons, who were <u>not</u> eligible to the class of

"natural-born Citizens", might, however, be citizens under the 14th Amendment:

> The Constitution does not, in words, say who shall be natural-born citizens. Resort must be had elsewhere to ascertain that. At common-law, with the nomenclature of which the framers of the Constitution were familiar, it was never doubted that all children born in a country of **parents who were its citizens** became themselves, upon their birth, citizens also. These were natives, or **natural-born citizens**, as distinguished from aliens or foreigners.

*Minor v. Happersett* at 168 (Emphasis added).

Thus, there are two classes of persons discussed in the above quotation. Those born in the

country of citizen parents were labeled by the Court as "natives, or natural-born citizens", but these

were also further identified as being "distinguished from aliens or foreigners". The distinction is

crucial.

On one side are those who have <u>no</u> citizenship other than that of the United States, as

distinguished from those on the polar opposite side, who have absolutely <u>no</u> claim to citizenship in

the United States; "These were natives, or natural-born citizens, as distinguished from aliens or

foreigners." *Id.* Those who fall in between these two extremes make up a third class of persons

whose citizenship status, the Court noted, was subject to doubt: "Some authorities go further and

include as citizens children born within the jurisdiction without reference to the citizenship of the

parents. **As to this class there have been doubts, but never as to the first.**" *Id.* (Emphasis added.)

Had this third class been contemplated as having any claim to "natural-born Citizen" status, the

distinction employed by the Supreme Court would <u>not</u> make sense. The distinction created

specifically the class of persons who were "natural-born Citizens" under Art. 2, §1, since the two

classes discussed are in direct opposition to each other.

For example, a person born in the U.S., to a British father and U.S. citizen mother, would be considered a British subject. Whether this child would be, at his birth, a citizen under the 14th amendment, was left undecided by the Supreme Court in *Minor*. Assuming that the child is a U.S. citizen, where does that child fit into the distinction offered by the Court in *Minor*? The child is not on either polar extreme, since the child was not exclusively a U.S. citizen at birth, nor was the child exclusively a British subject at birth. He would <u>not</u> fit into the tri-parte citizenship distinction.

By choosing two extremes – those who, at their birth, are nothing but U.S. citizens – "as distinguished from aliens or foreigners" – those who, at their birth, have absolutely no claim to U.S. citizenship – the Supreme Court in *Minor* provided extra criteria to properly discern their holding, so that nothing has been left open as to the Court's identification of the specific "natural-born Citizens" class. This is made even more clear by the other federal citizenship holding from *Minor v. Happersett*:

> The very idea of a political community, such as a nation is, implies an association of persons for the promotion of their general welfare. Each one of the persons associated becomes a member of the nation formed by the association… For convenience it has been found necessary to give a name to this membership. The object is to designate by a title the person and the relation he bears to the nation. For this purpose the words 'subject,' 'inhabitant,' and 'citizen' have been used, and the choice between them is sometimes made to depend upon the form of the government. **Citizen is now more commonly employed**, however, and as it has been considered better suited to the description of one living under a republican government, it was adopted by nearly all of the States upon their separation from Great Britain, and was afterwards adopted in the Articles of Confederation and in the Constitution of the United States. **When used in this sense it is understood as conveying the idea of membership of a nation, and nothing more.**

*Minor v. Happersett* at 165-166 (1874). (Emphasis added.)

Therefore, when the Supreme Court uses the words, "citizen" or "citizenship", no other meaning may be implied other than, "membership of a nation", whereas, the "natural-born Citizens" clause only pertains to a requirement for holding public office. Those who are "natural-born Citizens" meet that qualification, but all who are citizens, natural-born, naturalized abroad, naturalized here, at birth, or later in life, are members of the nation. The word "citizen", according to the Supreme Court in *Minor*, refers to membership of a nation, and "nothing more".

Thus, reading the above-quoted passage in light of the definition of "citizen" from the unanimous opinion of Minor at page 166, it becomes indisputable that what is referred to here is membership in our nation, and "nothing more". Any attempt to insert the words – "natural born" – into this statement would be in direct opposition to the Court's very holding of the case.

Indeed, in *The Slaughter-House Cases*, 83 U.S. 36 (1872) decided two years before *Minor*, when the Court was composed of 8 of the 9 Justices involved with *Minor*'s unanimous opinion, the Court issued the following statement concerning the meaning of "subject to the jurisdiction thereof" in the 14th Amendment: "The phrase, 'subject to its jurisdiction' was intended to exclude from its operation children of ministers, consuls, and citizens or subjects of foreign States born within the United States." *Id.* at 73. Thus, only two years prior to *Minor*, the Court was of the opinion that persons born in the country to alien parents were not even citizens, never mind "natural-born Citizens". Then, two years later, in *Minor*, the Court identified the specific class "natural-born Citizens" as those born in the country of citizen parents, but left open the issue of who was eligible to the general class of citizens.

While the Court in *Minor* humbly recognized authorities that ran counter to their *dicta* from the *Slaughter-House Cases*, they were firm in their identification of the "natural-born Citizens" class.

13

Since Virginia Minor was a member of that specific class, she was automatically a member of the general class, and therefore, the 14th Amendment was held to be unnecessary to determine the citizenship of anyone eligible to the specific "natural-born Citizens" class.

### 2.   *WONG KIM ARK*

Upon this analysis of the *stare decisis*-binding holding of *Minor*, the *Arkeny*'s court's reliance upon the decision in *Wong Kim Ark* can be clearly demonstrated as misplaced.  In Wong Kim Ark, 169 U.S. 649 (1898) Justice Gray stated in regards to the *Minor* case: "In *Minor v. Happersett*, Chief Justice Waite, when construing, on behalf of the court, the very provision of the Fourteenth Amendment now in question, said: 'The Constitution does not, in words, say who shall be natural-born citizens. Resort must be had elsewhere to ascertain that.'"  *Wong Kim Ark* at 655.

This unfortunate remark by Justice Gray contains a clearly erroneous statement.  The Supreme Court in *Minor* did not construe the 14th Amendment as to the issue of citizenship.  Gray is absolutely wrong.  The Court in *Minor* construed Art II, §1, not the 14th Amendment.  For over a century, it has been wrongly assumed that the Court in *Minor* did construe the 14th Amendment, and that the holding of *Minor* was later superseded by *Wong Kim Ark*.  This is not correct.

A more careful reading of the Supreme Court's opinion in *Minor* makes it clear that it did not construe the 14th Amendment with regard to the citizenship of the woman who wished to vote.  The question presented was whether, since the adoption of the 14th Amendment, women had gained the right to vote.  The Supreme Court in *Minor* held that nowhere in the Constitution, including the 14th Amendment, was anyone, man or woman, granted a right to vote.  And it was only this part of the *Minor* case which was superseded by the belated-enacted 19th Amendment.

The other issue decided by the Court in Minor required the Supreme Court to determine if

14

the woman was, in fact, a US citizen. As to this determination, the Court did not construe the 14th Amendment. In fact, the Court specifically avoided construing the 14th Amendment with regard to her citizenship. Instead, the Supreme Court in *Minor* chose to construe Art II, §1: "There is no doubt that women may be citizens. They are persons, and by the fourteenth amendment 'all persons born or naturalized in the United States and subject to the jurisdiction thereof ' are expressly declared to be 'citizens of the United States and of the State wherein they reside.' But, in our opinion, it did not need this amendment to give them that position." The Supreme Court stops short of construing the 14th Amendment as to whether the woman in question was a US citizen. The Court made a certain, direct determination that Mrs. Minor was a US citizen <u>before</u> the adoption of the 14th Amendment and that she did not need the 14th Amendment to be a US citizen. Therefore, the holding in *Minor* is in no way superseded by *Wong Kim Ark.*

Chief Justice John Marshall said, in delivering the opinion of the Court in *Marbury v. Madison* (1803) stated: "It cannot be presumed that any clause in the constitution is intended to be without effect; and therefore such construction is inadmissible, unless the words require it." Simply stated, Mrs. Minor fit into the class of "natural born Citizens", while Obama does not.

**IV.    THE EXECUTIVE INVITES THIS COURT TO COMMIT JUDICIAL TREASON**

Sibley has a legitimate grievance: His Constitutionally-guaranteed right to a "natural born Citizen" President has been apparently breached. In response to his proper petitioning, the Executive invites this Court to refuse to adjudicate the properly presented question of the Executive's eligibility to be President. As Justice Marshall observed in *Cohens v.* Virginia, 19 U.S. 264, 6 Wheat. 264, 404 (1821):

It is most true that court will not take jurisdiction if it should not; but

15

it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. **With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution.** Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgement, and conscientiously perform our duty. (Emphasis added).

Indisputably, one of the chief ways of petitioning for redress is through cases brought in our courts. To prevent this First Amendment guarantee of the right to petition, the Executive has argued – and the Supreme Court under the supervision of Chief Justice Rehnquist created out of whole cloth – the doctrine of standing. It is this doctrine which Obama now invokes in an attempt to have this Court ignore its plain duty to "say what the law is": In this case, what is the definition of "natural born Citizen".

Unlike "case or controversy" which the Framers understood and expressly employed in Article III, standing is <u>not</u> mentioned in our Constitution nor was it the records of the several conventions. Thus it can be fairly said that "Standing" was neither a legal term-of-art nor a familiar doctrine at the time the Constitution was adopted.[4]

For much of our nation's history, the terms "case" or "controversy" were interpreted to impose upon those seeking redress in the court the simple requirement that a plaintiff must have a cause of action in order for his or her grievance to be heard in federal court.[5] How inconvenient for

---

[4]    Raoul Berger, *Standing to Sue in Public Actions: Is It a Constitutional Requirement?*, 78 Yale L.J. 816, 818 (1968).

[5]    *See, e.g.*, Cass R. Sunstein, *What's Standing After Lujan? Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163, 170 (1992) ("There had always been a question whether the

a federal government which seeks repeatedly to trample on the rights of its citizens that such behavior could be held up to the lens of judicial resolution and adverse consequences applied to the government actors. See: *National Security Agency Spying.*[6]

In response to the threat that First Amendment right to access court represents, the judicially-created doctrine of "standing" began to evolve in the last half of the 20th Century to permit the Courts to abdicate their role to review the merits of a plaintiff's claim.

The gravamen of modern "standing" doctrine is not the existence of a cause of action, but instead the suffering by the plaintiff of a "direct injury". The genesis of the "standing" doctrine is found in the case of *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923). In *Frothingham*, the court held that the judiciary is not competent to adjudicate the legality of the action of a coordinate branch unless the plaintiff is threatened with "direct injury" as distinguished from what "he suffers in some indefinite way in common with people generally." Significantly, the word "standing" is never once mentioned in *Frothingham,* where the Supreme Court declined to entertain a suit by a taxpayer challenging as unconstitutional a federal appropriations act. The then 120-year-old duty of the courts

---

plaintiff had a cause of action, and this was indeed a matter having constitutional status. Without a cause of action, there was no case or controversy and hence no standing."); Akhil Reed Amar, *Law Story,* 102 Harv. L. Rev. 688, 719 n.154 (1989)("Attention to the etymological linkages between "case' and "cause' should help to remind us that a properly framed case in which a plaintiff has "standing' is simply one in which she has a cause of action. . . . Whether such a cause of action exists cannot be determined by staring at the words of article III; one must look outside that article to substantive constitutional, statutory, and common law norms."); Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983)("Legal injury is by definition no more than the violation of a legal right; and legal rights can be created by the legislature.")

[6]    "The U.S. government with assistance from major telecommunications carriers including AT&T has engaged in a massive program of illegal dragnet surveillance of domestic communications and communications records of millions of ordinary Americans since at least 2001." Retrieved from: https://www.eff.org/issues/nsa-spying

to "say what the law is" was newly interpreted to be limited as follows: "When the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon [an act of Congress] The party who [seeks to invalidate the law] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Id.* at 488.

Yet, this *ex cathedra* pronouncement in *Frothingham* radically deviates from the preceding 150 year history without explanation and in defiance of the strictures of *stare decisis*. Nowhere in English common law practice can be found the requirement that a plaintiff must show an actual or threatened direct personal injury in order to have his or her complaint heard in a court of law. Such a blatantly anti-originalist position reads into Article III a limitation found neither in its text nor blatant structure, nor in the general judicial practice running deep in our history. Indeed, "when we turn to pre-Constitution English law ... we find that attacks by strangers on action in excess of jurisdiction [occupied] the courts in Westminster." *Berger*, supra note 255, at 819; see also Steven L. Winter, *The Metaphor of Standing and the Problem of Self-Governance*, 40 Stan. L. Rev. 1371, 1396-97 (1987)("Prior to the Revolution, other writs as well as equity practices brought before the courts cases in which the plaintiff had no personal interest or injury-in-fact. Under the English practice, 'standingless' suits against illegal governmental action could be brought via the prerogative writs of mandamus, prohibition, and certiorari issued by the King's Bench."); 2 Edward Coke, *Institutes of the Laws of England* 602 (1797)("The kings courts that may award prohibitions, being informed either by the parties themselves, or by any stranger, that any court termporall or ecclesiasticall doth hold plea of that (whereof they have not jurisdiction)").

In particular, an information of quo warranto, brought to challenge the usurpation of a public franchise was available to strangers <u>unable</u> to demonstrate personal injury.  As Professor Berger concludes after a thorough review of English practice:

> At the adoption of the Constitution, in sum, the English practice in prohibition, certiorari, quo warranto, and informers' and relators' actions encouraged strangers to attack unauthorized action. So far as the requirement of standing is used to describe the constitutional limitation on the jurisdiction of [the Supreme] Court to "cases" and "controversies;" so far as "case" and "controversy" and "judicial power" presuppose a historic content; and so far as the index of that content is the business of the ...courts of Westminster when the Constitution was framed, the argument for a constitutional bar to strangers as complainants against unconstitutional action seems to me without foundation.

Berger, *supra* note 255, at 827 (citations omitted).

A painstaking search of the historical material demonstrates that - for the first 150 years of the Republic – the Framers, the first Congresses, and the Court were <u>oblivious</u> to the modern conception either that standing is a component of the constitutional phrase "cases" or "controversies" or that it is a prerequisite for seeking governmental compliance with the law.[7]

---

[7]     Upon completing an exhaustive study of American jurisprudence in the years between the Founding and *Frothingham*, Professor Cass Sunstein concluded: "In that period, there was no separate standing doctrine at all. No one believed that the Constitution limited Congress' power to confer a cause of action. Instead, what we now consider to be the question of standing was answered by deciding whether Congress or any other source of law had granted the plaintiff a right to sue. To have standing, a litigant needed a legal right to bring suit. The notion of injury in fact did not appear in this period. The existence of a concrete, personal interest, or an injury in fact, was neither a necessary nor a sufficient condition for a legal proceeding. People with a concrete interest could not bring suit unless the common law, or some other source of law, said so. But if a source of law conferred a right to sue, "standing" existed, entirely independently of "concrete interest" or "injury in fact." Implicit in these ideas was a particular conception of Article III and a particular understanding of the relationship between Article III and standing. If neither Congress nor the common law had conferred a right to sue, no case or controversy existed." *Sunstein*, at 170.

Thus the historical precedent for this suit in which Sibley is acting *ex Relator* to enforce the government's compliance with Article II, §1 is well-founded and cannot be denied upon the doctrine of standing which is nothing more than an abdication of this Court's duty to adjudicate. As Justice Harlan noted in *Flast v. Cohen*, 392 U.S. 83, 120 (1968): "Federal courts have repeatedly held that individual litigants, acting as private attorneys-general, may have standing as 'representatives of the public interest.' The various lines of authority are by no means free of difficulty, and certain of the cases may be explicable as involving a personal, if remote, economic interest, but I think that it is, nonetheless, clear that non-*Hohfeldian* plaintiffs as such are not constitutionally excluded from the federal courts."

Thus in *Flast*, recognizing the "uncertain historical antecedents" of standing and other "justiciability" doctrines, the Court concluded that we must turn to "the implicit policies embodied in Article III, and not history alone," to understand the jurisdictional limitations imposed by the terms "case" and "controversy." *Id.* at 96. Thus unmoored from historic precedent, the doctrine of "standing" became a harlot of judicial discretion, guided only by the "implicit policies" the judiciary was able to *ex cathedra* divine from Article III. The result: the cloaking of merits-based decisions as standing-based rulings obfuscates the laws controlling government action and limits the ability of plaintiffs to bring such actions. The judiciary is then able to avoid "saying what the law is" by preventing plaintiffs from petitioning for relief.

As Chief Justice Marshall established in *Marbury*, it is the province of the courts to "decide on the rights of individuals." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). Yet this is not possible when the courts refuse to decide the merits of a claim, instead denying the right to petition by erection of the "standing" barrier. Indeed, *Marbury* continues: "Where a specific duty

is assigned [to the executive branch] by law, and individual rights depend upon the performance of that duty, it seems ... clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy." *Id.* at 166. Yet with the judicial evolution of "standing", Sibley is now being denied "resort" to this Court "for a remedy" to his claim that Obama – his opponent in the upcoming election – is <u>not</u> eligible to serve as President.

Justice Douglas summed up best the conflict that the "standing" doctrine creates with a judge's duty: "The judiciary is an indispensable part of the operation of our federal system. With the growing complexities of government it is often the one and only place where effective relief can be obtained. If the judiciary were to become a super-legislative group sitting in judgment on the affairs of the people, the situation would be intolerable. But where wrongs to individuals are done by violation of specific guarantees, it is abdication for the courts to close their doors." *Flast* at 111. To avoid this difficult case as invited by Obama by invoking the doctrine of "standing", this Court would be declining the exercise of jurisdiction to which is given  "say what the law" an act which would be "treason to the Constitution."

## V.   SIBLEY HAS STANDING

If this Court believes that its oath of office is subservient to its obedience to the Supreme Court's radical departure from the guarantees found in the First Amendment to petition and access court represented by the abhorrent doctrine of "standing", Sibley nonetheless has such "standing" both under common law and statutory grounds and thus this "case" must expeditiously proceed.

### A.   SIBLEY HAS STANDING UNDER THE NINTH AND TENTH AMENDMENTS

Sibley's first ground for claiming the right to challenge Obama's eligibility to be President and appear on the ballot is grounded in those rights "reserved" and "retained" by Sibley under the

Ninth and Tenth Amendments.

In response to this well-founded argument, Obama only cites a district court case for the proposition that "no basis for th[e] claim" that "the authority to act as a private attorney general is authorized pursuant to powers reserved under the Ninth and Tenth Amendment s." *Smith v. Anderson*, 2009 U.S. Dist. LEXIS 108220 at *6 (D. Col. 2009). (Def. Mot. to Dismiss, p. 8, f/n #3).

Against that lightweight citation, the jurisprudence is quite to the contrary. As to the Ninth Amendment: That Amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The extent of those Ninth Amendment rights was detailed in *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) in Justice Goldberg's concurrence:

> While the Ninth Amendment—and indeed the entire Bill of Rights—originally concerned restrictions upon federal power, the subsequently enacted Fourteenth Amendment prohibits the States as well from abridging fundamental personal liberties. And, the Ninth Amendment, in indicating that not all such liberties are specifically mentioned in the first eight amendments, is surely relevant in showing the existence of other fundamental personal rights, now protected from state, as well as federal, infringement. In sum, the Ninth Amendment simply lends strong support to the view that the 'liberty' protected by the Fifth And Fourteenth Amendments from infringement by the Federal Government or the States is not restricted to rights specifically mentioned in the first eight amendments.

Similarly, in *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937), the Supreme Court said that this category of fundamental rights includes those fundamental liberties that are "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [they] were sacrificed." A different description of fundamental rights appeared in *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977) where they are characterized as those liberties that are "deeply rooted in this Nation's history

and tradition."

The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The conceptual framework for analysis of that Amendment is well laid-out by Alexander Meiklejohn: "For the understanding of these principles it is essential to keep clear the crucial difference between 'the rights' of the governed and 'the powers' of the governors. And at this point, the title 'Bill of Rights' is lamentably inaccurate as a designation of the first ten amendments. They are not a 'Bill of Rights' but a 'Bill of Powers and Rights.' The Second through the Ninth Amendments limit the powers of the subordinate agencies in order that due regard shall be paid to the private 'rights of the governed.' The First and Tenth Amendments protect the governing 'powers' of the people from abridgment by the agencies which are established as their servants. In the field of our 'rights,' each one of us can claim 'due process of law.' In the field of our governing 'powers,' the notion of 'due process' is Irrelevant." *The First Amendment Is an Absolute*, 1961 Sup. Ct. Rev. 245, 254.

In applying the Tenth Amendment, the Supreme Court has been very clear: "The powers granted by the Constitution to the Federal Government are subtracted from the totality of sovereignty originally in the states and the people. Therefore, when objection is made that the exercise of a federal power infringes upon rights reserved by the Ninth and Tenth Amendments, the inquiry must be directed toward the granted power under which the action of the Union was taken. If granted power is found, necessarily the objection of invasion of those rights, reserved by the Ninth and Tenth Amendments, must fail." *United Public Workers v. Mitchell* , 330 U.S. 75, 96 (1947).

Thus, Sibley's petition presents this question: What granted power to the federal government

found in the Constitution denies a citizen the right to challenged the usurpation by an unqualified individual to the presidency? Where in the Constitution did the People give up the right to challenge the illegal behavior of their government? Where in the Constitution did the People grant to the government the <u>sole</u> authority to challenge the government's alleged illegal activities. Such a proposition is simply inane: Did the Framers create a government which the People could not control? Plainly, the Ninth and Tenth Amendments surely say the opposite.

As such, to the extent that "standing" is a valid judicial doctrine, Sibley clearly has such standing under the Ninth and Tenth Amendments.

### B.    CONGRESS HAS GRANTED SIBLEY STANDING

In addition to the "power" Sibley enjoys under the Ninth and Tenth Amendments to challenge Obama's eligibility, Congress has stepped in an augmented that "power" though action of D.C. Code, Division II, Title 16, §3503 by authorizing an "interested person" to bring this *quo warranto* action. That section states: "If the Attorney General or United States attorney refuses to institute a quo warranto proceeding on the request of a person interested, the interested person may apply to the court by certified petition for leave to have the writ issued. When, in the opinion of the court, the reasons set forth in the petition are sufficient in law, the writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of the interested person on his compliance with the condition prescribed by section 16-3502 as to security for costs." (Dec. 23, 1963, 77 Stat. 602, Pub. L. 88-241). Sibley is an "interested person" as he is a declared write-in candidate for the November 6, 2012, election for the office of President of the United States.

Here, uncontested by the Defendants, "the Attorney General or United States attorney refuses to institute a quo warranto proceeding" through properly requested. (First Amended Complaint, ¶18).

Thus, the seminal question – which Sibley continues to maintain is for the Jury as detailed in Part I, *supra* – is Sibley an "interested person" as required by §3503?

In *Newman*, the phrase "interested person" was addressed:

> So that the fundamental question is whether the law of force in the District permitted him, as a private citizen without the consent of the law officers, to test Newman's title to the public office of Civil Commissioner. . . . That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title. . . . As pointed out in the carefully prepared opinion of the majority of the Court of Appeals of the District, there is much conflict as to the meaning of the phrase "interested person" in this class of cases. . . .Considering the ancient policy of the law and the restrictions imposed by the language of the Code, it is evident that in passing this statute Congress used the words "third person" in the sense of "any person" and the phrase "person interested" in the sense in which it so often occurs in the law – prohibiting a judge from presiding in a case in which he is interested; preventing a juror from sitting in a case in which he is interested; and permitting interested persons to institute quo warranto proceedings. In the illustrations suggested, the interest which a judge had as a member of the public would not disqualify him from sitting in a case of great public importance and in which the community at large was concerned. The interest which disqualifies a juror from serving, as well as the interest which would authorize this plaintiff to sue, must be some personal and direct interest in the subject of the litigation. The same definition has often been given in quo warranto cases.

*Id.* Here, Sibley can claim such a "different" right. Could Sibley sit as a judge or juror a case challenging Obama's eligibility when he is a registered and publically declared candidate for the same office? Of course not: Sibley would be disqualified as a judge or juror because he possesses – different from any other non-candidate citizen – a "personal and direct interest in the subject of the litigation". Hence, under §3503, Sibley is an "interested person" and thus is authorized by that

statute to petition this Court and this Court is thus obligated – solely upon "the reasons set forth in the petition" if they are sufficient in law – to allow the writ "to be issued by any attorney, in the name of the United States, on the relation of the interested person."[8]

Moreover, adjudicating a challenge to a government official on the ground that the official invalidly holds office has substantial support in the case law. Both the Supreme Court and lower federal courts have adjudicated such challenges. *See, e.g., Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974)(challenge to appointment of Nominating Panel for Philadelphia School Board, in which plaintiffs sought to have actions taken by panel overturned); *Glidden Co. v. Zdanok*, 370 U.S. 530 (1962)(adjudicating challenge to conviction on ground that the judge allegedly did not hold office validly under Article III of the Constitution); *United States v. Woodley*, 726 F.2d 1328 (9th Cir. 1983)(adjudicating challenge to sentence on ground that recess appointment of judge was invalid); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)(defect in hearing examiner's appointment would invalidate a resulting order if objection were made at time of hearing).

Finally, this Court cannot avoid the obvious problem this case presents: The sole public officials charged by §3503 with enforcing the Article II, §1 eligibility requirement have been appointed by Obama. Requiring Sibley to convince the Attorney General to file a *quo warranto* against his boss is a practical and political impossibility and as such effectively bars Sibley's access to court to enforce his right to an Article II, §1 eligible President.

Though the Independent Counsel Act, 28 U.S.C. 591 has been repealed and replaced with

---

[8]     Indeed, for this Court to even entertain the Defendants' motion to dismiss violates the letter and spirt of the law which seeks to have an impartial tribunal determine the sufficiency of the verified petition without the pressure of the Executive branch weighing-in on the matter.

U.S. Department of Justice Office of Special Counsel the same conflict remains. Hence, the anomalous authority of this Court to appoint counsel when a conflict between the U.S. Attorney's office and its Congressionally-assigned duty is present remains. *See*: *Young v. U. S. ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 790 (1987)("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt.") Accordingly, given the public policy issues plainly present, this Court must at the very least, appoint a special prosecutor to discharge the role of the U.S. Attorney under §3501 *et seq.* in order to avoid the appearance of being complicit in a major fraud upon the electorate and insulting the People's power to require its government be administered according to law.

## VI.    A *QUO WARRANTO* WRIT IS THE APPROPRIATE LEGAL MECHANISM TO CHALLENGE OBAMA'S ELIGIBILITY

As detailed in the First Amended Complaint, Sibley seeks: "A Writ of Quo Warranto ousting Obama as President of the United States and/or preventing him from holding the franchise of being on the ballot for that office in 2012 insomuch as he is <u>not</u> a "natural born Citizen" of the United States as required by Article II, §1, of the U.S. Constitution." *Id.* at ¶1. In response, Defendant Obama's argues that: "the relief Plaintiff seeks is unavailable through quo warranto." (Def. Mot. to Dismiss, p. 2). Obama's argument ignores both the reach of the common law and statutory writ of *quo warranto*.

### A.    COMMON LAW *QUO WARRANTO* WRIT

Under the common law, the information in the nature of quo warranto was described by Blackstone as "a remedy given to the crown against such as had usurped or intruded into any office

or franchise." 4 *Blackstone's Commentaries*, 304-05. This "ancient writ of quo warranto" was "in the nature of a writ of right for the King against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim, in order to determine the right." *Id.*

Subsequently, the statute 9 Ann. c. 20 allowed "an information in the nature of quo warranto to be brought with leave of the court, **at the relation of any person desiring to prosecute the same**," which person was then called the "relator." 3 *Blackstone's Commentaries*, at 264. The information would lie against "any person usurping, intruding into, or unlawfully holding any franchise or office in any city, borough, or town corporate." *Id.*

Hence, as Sibley is "any person" who manifestly desires to "prosecute" the writ, this Court has the common law authority to enter a judgment for Sibley as *ex Relator* which: "may be a general judgment of ouster, an ouster of the right to do the particular act complained of, a suspensive judgment of ouster with a fine accompanying it, or a simple fine." 10 *Ency. Laws of England*, pp. 638-639.

### B.   STATUTORY *QUO WARRANTO* WRIT

Likewise, under §3501, this Court is expressly authorized to issue a judgment of Ouster of Obama both from the Presidency and from the franchise of being on the ballot for the 2012 election. That section stated: "Persons against whom issued; civil action. A quo warranto may be issued from the United States District Court for the District of Columbia in the name of the United States against a person who within the District of Columbia usurps, intrudes into, or unlawfully holds or exercises, a franchise conferred by the United States or a public office of the United States, civil or military." Here, Sibley maintains with sufficient and competent evidence that Obama "usurps, intrudes into, or unlawfully holds or exercises, a franchise conferred by the United States or a public

office of the United States", to wit, the Presidency and the "franchise" of being on the ballot for the 2012 Presidential election for the plain reason that he is not eligible under Article II, §1. Therefore, this Court has Congressionally-granted authority to grant the relief Sibley requests in his *quo warranto* petition.

### C.   OBAMA'S SEPARATION OF POWERS ARGUMENT FAILS

In response, Obama raises the argument that: "Any such order would necessarily take the form of an injunction running against the President and would transgress the separation of powers explicitly set forth in the Constitution." (Def. Mot. to Dismiss, p. 10). In support, Obama cites the Court to the: (i) Twelfth Amendment and the Twentieth Amendment, (ii) Art. I, § 2, cl. 5, § 3, cl. 6, and Art. II, § 4 and (iii) Twenty-Fifth Amendment. Upon review, these arguments must also be rejected by this Court.

As to the Twelfth Amendment and the Twentieth Amendments, Obama claims that: "the Constitution assigns the responsibility for selection of the President to the Electoral College" and the Twentieth Amendment further provides for a situation in which "the President elect shall have failed to qualify," the set of conditions which Sibley alleges have been met here, making clear that "the Vice President elect shall act as President until a President shall have qualified." (Def. Mot. to Dismiss, p. 10). Clearly, Congress does not recognize that interpretation of Twelfth and Twentieth Amendments for otherwise why enact §3501 *et seq*.? Moreover, the term "qualified" in the Twentieth Amendment addresses the procedure in the Twelfth Amendment for selecting a President, not adjudication of a person's eligibility, something clearly left to the jury as was the case in *Newman*.

As to the Article I and II argument, Obama maintains that: "The Constitution provides for

the President to be removed from office through impeachment, with the 'sole power' to impeach reserved to the House of Representatives and the 'sole power' of trial committed to the Senate." (Def. Mot. to Dismiss, pp. 11-12). This is doubtlessly true but only when the allegations relate to the enumerated grounds for impeachment found in Article II, §4: "The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors." Clearly, not being "eligible" to be President under Article II, §1 does not violates any of these proscriptions. Hence, Congress does not possess the power to remove a President for being ineligible. Thus, it falls to the Judiciary to adjudicate that issue.

Last, Obama claims that the Twenty-Fifth Amendment: "further describes a procedure by which the Vice President, with the cooperation of other federal officers, may identify to Congress a presidential infirmity and then exercise the power to act as President". A review of the Twenty-Fifth Amendment belies such an interpretation. That Amendment requires the Vice President transmit his written declaration that the President is unable to discharge the powers and duties of his office. To allow the Vice President – selected by the President – to be the sole determiner of whether the President is eligible ridiculously concentrates the determination of the eligibility question in the hands of only one person – a person obviously beholden to the President. We the People are simply not so stupid as to create a government where the institution of an oligarchy is so easily achieved.

In sum, the People, here represented by Sibley who is not disenfranchised by the Byzantine rules of court which deny access to so many due to his considerable knowledge and skill at navigating the countless procedural and substantive impediments to obtaining justice raised by the

so-called justice system, have the "power" to demand that their government be exercised according to the specific and limited rules upon which that government was founded. In this instance, that means that a challenge to the eligibility of Obama to be President is properly brought before this Court for adjudication by the People in the body of a Jury. Any other result relegates that "retained" and "reserved" power of the People to the Court's cuspidor.

## VII.    SIBLEY'S *MANDAMUS* CLAIMS ARE AUTHORIZED

Defendants almost correctly state Sibley's *mandamus* request. "Plaintiff brings two claims for mandamus-type relief: a request that the Court require the U.S. Attorney and the Attorney General to bring a quo warranto action pursuant to Plaintiff's instructions; and a request that the Court command the U.S. Attorney to present certain evidence to a grand jury pursuant to 18 U.S.C. § 1332." (Def. Mot. to Dismiss, p. 12). However, Defendants incorrectly conclude that such relief is not available.

### A.    MANDAMUS TO DECIDE WHETHER TO BRING *QUO WARRANTO* SUIT

Contrary to Defendants' claim that Sibley seeks a writ of *mandamus* to compel the: " U.S. Attorney and the Attorney General to bring a quo warranto action", the true relief requested is quite different. "Alternatively, if a Writ of Prohibition does not issue for the reason that the Court finds the condition precedent to this *Ex Relator* suit in D.C. Code, Division II, Title 16, Chapter 35 has not been met due to the failure of Holder and/or Machen to refuse to file such a petition, then  a Writ of Mandamus to Holder and Machen to file or refuse to file such petition." (First Amended Complaint, ¶1).

Thus, to be clear, Congress has imposed by action of §3501 *et seq.* a duty on the Defendants to either file or not file a *quo warranto* action when requested by "any person". Here, insomuch

as some 120 days have passed <u>without</u> the filing of such an action – let alone extending the professional courtesy of acknowledging receipt of the Congressionally-created right to request institution of a *quo warranto* suit – it is plain that these Defendants are <u>ignoring</u> that duty. Clearly, Congress did not intend to allow the Executive to defeat its intention to allow a third party to bring a *quo warranto* suit – after investing this Court with jurisdiction to authorize same – by allowing the Executive to ignore such a request.

Hence, *mandamus* is the appropriate remedy to compel the Defendants to proverbially "fish or cut bait" on Sibley's request for institution of a *quo warranto* suit as such a decision is *not* discretionary.

**B.    THE EXECUTIVE CANNOT REPEAL 18 U.S.C. §3332 BY FIAT**

Incontrovertibly, Congress has, through action of 18 U.S.C. §3332(a), vested in Sibley the right to have information presented to the Grand Jury. That section states:

> It shall be the duty of each such grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. **Any such attorney receiving information concerning such an alleged offense from any other person <u>shall</u>, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.** (Emphasis added).

Clearly, Congress intended no discretion be vested in the U.S. Attorney to decline to present such information when properly presented. The official legislative history of §3332 as it was finally passed contains the following language: "Any such attorney who receives information of an alleged offense from any person must, if requested by the person, inform the grand jury of the alleged

offense, the identity of the person who conveyed the information, and his own action or recommendation." 2 *U.S. Code Cong. & Adm. New*, House Report No. 91-1549, 91st Cong. 2d Sess. (1970) at 4015. *Accord*: *In the Matter of In re Grand Jury Application*, 617 F. Supp. 199 (S.D.N.Y. 1985)("Since the United States Attorney has been requested to present certain information to the Grand Jury he must do so. I will not relieve him of a duty which Congress has seen fit to impose. 18 U.S.C. §3332(a) imposes a 'plainly defined and peremptory duty' on the part of the United States Attorney to present the plaintiffs' information concerning the alleged wrongdoing of the other defendants to the Grand Jury.")

In response, Defendants invite this Court to <u>ignore</u> this Congressional mandate claiming: "Plaintiff's claim fails because Section 3332 does not confer standing on private individuals to enforce its terms." (Def. Mot. to Dismiss, p. 14). Again, the Executive invites the Judiciary to create new barriers to the People seek redress of their grievances. Though admittedly, *Sargeant v. Dixon*, 130 F.3d 1067, 1069-70 (D.C. Cir. 1997) cited by Defendants found no "standing" for lack of "any cognizable injury" by the plaintiff, upon the arguments raised above against standing – and the absurdity of having a specific Congressionally-granted right without a concomitant ability to enforce that right – this Court must reject the holding in *Sargeant*. Simply stated, if Sibley can't compel the Defendant to exercise the Congressionally-imposed duty levied upon them by §3332, then who can?

## VIII. BOTH 18 U.S.C.§1504 AND THE FEDERAL RULES OF CRIMINAL PROCEDURE, RULE 6, VIOLATE SIBLEY'S FIRST AND FIFTH AMENDMENT RIGHTS

In his Fifth Claim, Sibley raises a demand for declaratory relief claiming that the Federal Rules of Criminal Procedure, Rule 6 and 18 U.S.C. §1504, both on their face and as applied,

violate: (i) Sibley's First Amendment right to petition and (ii) Sibley's Fifth Amendment right to present evidence to the Grand Jury towards the end of seeking an indictment or presentment. Accordingly, Sibley maintains he the right to petition the government by directly communicating in writing to each sitting Grand Juror regarding the alleged Wire Fraud of Obama and other criminal acts of federal actors in the District of Columbia – including without limitation members of this Court and the U.S. Attorney's office – which might warrant further investigation to the end of the Grand Jury issuing either an "indictment" or Fifth Amendment authorized "presentment".

The First Amendment states in pertinent part: "Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances." Plainly, the First Amendment has: "penumbras, formed by emanations" which help give the First Amendment's right to petition the government its "life and substance." Here, the Grand Jury is surely part of that "government" which Sibley has the right to petition without: (i) threat of criminal sanction pursuant to 18 U.S.C. §1504 and/or (ii) intermediation by this Court or the United States Attorney's office. This latter referenced right is particularly significant when Sibley's allegations involve criminal behavior by this Court and/or the United States Attorney's office. Hence, Sibley's First Amendment right must contain the right to directly – under seal – communicate with the Grand Jury and which Congress can make no law which abridges that right.

The Fifth Amendment in pertinent part states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . .". In 1758, Blackstone gave the classic definition of a presentment: "A presentment, properly speaking, is the notice taken by a grand jury of any offence from their own knowledge or observation, without any bill of indictment laid before them at the suit of the king. . . . upon which

34

the officer of the court must afterwards frame an indictment, before the party presented as the [perpetrator] can be put to answer it." Thus, a "presentment" is a Grand Jury communication to the public concerning the Grand Jury's investigation. It has traditionally been an avenue for expressing grievances of the people against government. In early American common law, the presentment was a customary way for grand juries to accuse public employees or officials of misconduct. The right of a Grand Jury to make a "presentment" was based upon the Constitutional Framers' demand for this institutionalize protection as "a bulwark against oppression". Indeed, in 1895, Justice Brewer in *Frisbie v. United States*, 157 U.S. 160, 163 (1895) described a system relying on an energetic Grand Jury: "[I]n this country the common practice is for the Grand Jury to investigate any alleged crime**, no matter how or by whom suggested to them**, and after determining that the evidence is sufficient to justify putting the party suspected on trial, to direct the preparation of the formal charge or indictment." (Emphasis added). Accordingly, the right of a Grand Jury to make a "presentment" enjoys organic law status.

In light of the historic independence of the Grand Jury, the perfidy of 18 U.S.C.§1504 and the Federal Rules Advisory Committee in limiting the Constitutionally-set role of the Grand Jury institution through codification in the Federal Rules of Criminal Procedure, Rule 6, can only be seen as a willful subversion of well-settled law. Section 1504 makes it a crime for anyone to communicate directly with the Grand Jury. Rule 6 ignores the "presentment" function of the Grand Jury and in its "notes" relegates "presentments" to oblivion. Moreover, in this Circuit by judicial fiat, "presentments" have been abolished. *Gaither v. United States,* 413 F.2d 1061, 1065 (D.C. Cir. 1969)(opinion by Judge Skelly Wright striking down presentment procedure and requiring resubmission of indictment to full Grand Jury)

35

A truly independent Grand Jury – which pursues a course different from the prosecutor – is impossible today given §1504 and Rule 6 since that statute and rule were codified in 1946. The loss of the Grand Jury in its traditional, authentic, or runaway form, leaves the modern federal government with few natural enemies capable of delivering any sort of damaging blows against it. Supreme Court Justice William Douglas wrote in 1973 that it was "common knowledge that the Grand Jury, having been conceived as a bulwark between the citizen and the Government, is now a tool of the Executive." *United States v. Dioniso*, 410 U.S. 19, 23 (1973)(Douglas, J., dissenting).

Simply stated, by statute, rule and case law, the Grand Jury has been emasculated in what can only be viewed as an absolute *coup d'etat* upon the Grand Jury by the federal government.

In response, the Defendants cite a cabal of late 20th century cases which collectively continue the progression of the concentration of power in the hands of the Executive and thus deserved to be ignore for their historical deviation from the original delegations of powers between the federal government and the People.  Indeed, the only citation to 19th century cases by Defendants are inapposite.  In *Confiscation Cases*, 74 U.S. 454, 457 (1868) the Court never mentions the Grand Jury, hence Defendants' citation to that case is inane.  Likewise, the Defendants' quotation from *United States v. Kilpatrick*, 16 F. 765, 769, 771 (W.D.N.C. 1883)("no right to communicate private information to a grand jury for the purpose of obtaining a presentment") is misleading.  In *Kilpatrick*, the full quote related to the Grand Jury is as follows:

> An individual has no right to communicate private information to a grand jury for the purpose of obtaining a presentment. If he desires to prosecute an offender there are two modes by which he may accomplish his purpose. He can give information to the solicitor of the state, and have a bill of indictment prepared and sent to the grand jury, and have his name marked as prosecutor, and thus become responsible for the costs and other liabilities which he may incur for

the prosecution of a criminal action which he has instituted. He may also make a written complaint on oath before an examining and committing magistrate, and obtain a warrant of arrest and have a preliminary investigation of the accusations made, when and where the defendant can confront his accuser and witnesses with other testimony and have counsel for his defense. This mode is in conformity with our state and national constitutions, and consonant with the principles of natural justice and personal liberty founded in the common law.

*Id.* at 769-770. Clearly, in the 19th century a citizen could invoke the Grand Jury's attention to compel the machinery of a Fifth Amendment "indictment or presentment". That 19th century practice has been eroded by the federal government and now stands impotent. Hence, in order to restore the historic independence of the Grand Jury and the right of the People to invoke its power to investigate government wrong-doing, this Court must declare that 18 U.S.C.§1504 and the Federal Rules of Criminal Procedure, Rule 6, both on their face and as applied, violate Sibley's First and Fifth Amendment rights to present evidence to the Grand Jury.

IX.   SIBLEY HAS STATED A CAUSE OF ACTION AGAINST THE UNITED STATES MARSHALS SERVICE AND DEPUTY MARSHAL JOHN DOE#1 AND DEPUTY MARSHAL JOHN DOE#2

In support of the motion to dismiss of Defendants U.S. Department of Justice by its sub-agency the United States Marshals Service and Deputy Marshal John Doe#1 and Deputy Marshal John Doe#2, their counsel raises two arguments to the end of claiming that Sibley has failed to state a cause of action thus the claims contained in Sixth Claim of the First Amended Complaint must be dismissed.

Initially, Sibley maintains as detailed in Part I, *supra*, that this issue is solely the province of the Jury. Moreover, as this Court well knows: "In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules require only that the complaint

contain 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]' Fed.R.Civ.P. 8(a). In applying Rule 12(b)(6), 'a complaint should <u>not</u> be dismissed for failure to state a claim unless it appears beyond a doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

To support its Rule 12(b)(6) motion, Defendant U.S. Marshal's service claims that: "Because Plaintiff has not suffered an 'actual injury' resulting from the conduct of the U.S. Marshals Service or the John Doe U.S. Marshals and has alleged no facts that suggest these Defendants overstepped their lawful authority, Plaintiff's claims as to these Defendants should be dismissed." (Def. Motion to Dismiss, p. 19). As the below cases make very clear, Sibley has plead an "actual injury" and as such these Defendants exceeded their authority.

As a starting point, this Court must recognized that right to access court is firmly established in the First Amendment. *Accord*: *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). Likewise, the right to petition a court is similarly ensconced in the First Amendment. *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011)("Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.' U.S. Constitution., Amendment 1."). Indeed, the Supreme Court has held that even a minimal infringement upon First Amendment rights constitutes irreparable injury sufficient to justify injunctive relief. *Erod v. Burns*, 427 U.S. 347, 373 (1976)("It is clear, therefore, that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury.") Finally, this Court may not ignore that under American law, after

the fact punishment for the exercise of free speech is every bit as pernicious as any form of prior

restraint. *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 969 (1984).

Defendant U.S. Marshal's Service does not cite in its Memorandum to any court decision

which has addressed the U.S. Marshal's Service "escort" issue in the context of "chilling" First

Amendment rights. Instead, Defendant U.S. Marshal's Service points the Court to a number of

cases which establish that the Defendants U.S. Marshal's Service has the "responsibility to maintain

the security of federal courthouses." (Def. Motion to Dismiss, p. 19). Sibley concedes that point.

Yet just as federal prison officials have the authority to maintain federal penitentiaries, those

officials, like the Defendant U.S. Marshal's Service, may not violate a person's First Amendment

rights to properly petition by retaliation when exercising their authority.

Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because

of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Here, Sibley has repeatedly

exercised his First Amendment right to petition the government through access to Court and the

"state actor took some adverse action against" Sibley, to wit, requiring an armed escort when Sibley

is in the building. Significantly, the limited evidence Sibley has been able to obtain irrefutably

demonstrates that there was no "legitimate goal" in escorting Sibley in the Courthouse.

In response to a Freedom of Information Request, the U.S. Marshal's Service responded in

November 2009 that a search of its files turned up a referral from 2006 regarding Sibley's citation

to the suicide epidemic in family courts. Significantly, after investigation, the Defendant U.S. Marshal's Service "closed" the investigation on December 11, 2006. A copy of the relevant part of the FOIA response is attached hereto and incorporated as part of the First Amended Complaint by references.

As Judge Gladys Kessler, Judge Robert Kennedy and Civil Intake Clerk Maureen would testify, Sibley has entered the U.S. Courthouse at 333 Constitution Avenue, N.W., Washington, D.C. 20001, dozens of times between December 11, 2006 and September 2009, without being "escorted". Hence, Sibley's claim that there was no "legitimate goal" in escorting of him has a basis in fact. Indeed, in baseball, the valid analogy is the "message pitch."[9]

Though no case is even analogously on point from this Circuit, sister circuits have held that a chill on an individual's ability to exercise his or her right to free speech and to petition is a constitutional injury-in-fact. In *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), the Ninth Circuit held that government officials' "eight-month investigation into the plaintiffs' [associational] activities and beliefs chilled the exercise of their First Amendment rights," which entitled the plaintiffs "to seek a remedy for this constitutional violation." *Id.* at 1226. The Tenth Circuit held in *National Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521 (10th Cir. 1994), that an organizational plaintiff could premise a *Bivens* claim seeking damages for a violation of First Amendment associational

---

[9]     "***Message Pitch:*** A pitch thrown close to the batter, intending to convey the message: Don't crowd the plate. *See also Purpose Pitch.*" ***Purpose pitch:*** A pitch thrown close to the batter to get him to back away from the plate. It is usually an inside fastball that can act as a knock-down pitch. *See also Message Pitch.* Etymology: Sportscaster Bob Uecker says the term was created by Branch Rickey. If so, it may have originated in the context of Rickey's observation that the purpose of a purpose pitch was to separate a batter's head from his shoulders. Umpire Ron Luciano *(The Umpire Strikes Back,* 1982) noted that the purpose of the purpose pitch was to remind the batter that the pitched ball is a weapon". *The New Dickson Baseball Dictionary*, Paul Dickson, Houghton Mifflin Harcourt (1999).

rights upon overzealous investigative procedures that had a chilling effect on its members' associational rights. *Id.* at 1530. That court concluded that a chill represents an injury-in-fact, stating that the plaintiffs could "establish their First Amendment claim" by "prov[ing] wrongful conduct by the defendant and that such conduct had a chilling effect on the plaintiffs' organizational activities and associational rights." *Id.* at 1531 n.4.

The Fifth Circuit in *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544 (5th Cir. 1988), held, that chilled speech constitutes an injury-in-fact. There, the court sustained an award of damages to compensate a plaintiff "for whatever injuries [he] may have suffered to his reputation and from the chilling effect the TRO had on the exercise of his First Amendment rights." *Id.* at 557. Most recently, the Second Circuit joined this chorus with its opinion in *Husain v. Springer*, 494 F.3d 108 (2d Cir. 2007) where a group of college-student journalists sued, claiming that the college president violated their First Amendment rights by nullifying the results of, and rescheduling, a student-government election in response to a hyper-partisan issue of a college newspaper. They sought nominal damages and premised this First Amendment claim upon chilled speech, specifically, the paper's subsequent reduction in election coverage out of fear that favorable coverage would lead to the disqualification of a candidate. *See Id.* at 119. Even though the results of the nullified election and the subsequent election were identical, the court held that the "chilling effect" upon the paper's coverage "g[ave] rise to a First Amendment injury." *Id.* at 128.

Each of the aforementioned cases indicates that a chill of expressive conduct constitutes a constitutional injury-in-fact sufficient to confer standing.

Likewise, the legal principles governing Fourth Amendment claims against law enforcement officers alleged to have used excessive force were summarized by the Supreme Court in *Graham*

41

*v. Connor*, 109 S. Ct. 1865 (1989). In that case, the Supreme Court clarified that such excessive force claims are subject to an "objective reasonableness" standard. Specifically, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 1872.

Here, upon the Fed.R.Civ.P. 8(a) allegations and the attached Freedom of Information response from the Defendant U.S. Marshal's Service, Sibley can prove a set of facts in support of his claim which would entitle him to relief. In short, that there was <u>no</u> "legitimate goal" in escorting Sibley and that it was <u>not</u> "objectively reasonable" to so escort him given his extensive history of entering the Courthouse without incident or cause for concern. Simply put, is this Court going to be party to authorizing the Government's position that its Praetorian Guard may – without cause – intimate without fear of any consequence those who would petition the court?

WHEREFORE, Sibley has stated a cause of action under *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and/or the Federal Tort Claims Act for the chilling of his right to access court, petition the government, for First Amendment retaliation and use of excessive force.

## X.   CONCLUSION

It is well to remember Mr. Justice Bradley's admonition more than a century ago which has even greater cogency in today's world of ever more expansive assertions of federal government invasions of the rights of the individual:

> [I]llegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal

42

> construction deprives them of half their efficacy, and leads to
> gradual depreciation of the right, as if it consisted more in sound
> than in substance. It is the duty of courts to be watchful for the
> constitutional rights of the citizen, and against any stealthy
> encroachments thereon.

*Boyd v. United States*, 116 U.S. 616, 635 (1886). Here, more than (i) the particular eligibility of

Obama, (ii) the Executive's right to control access to the Grand Jury and ability to ignore the

express mandates of Congress regarding that access and (iii) the unmooring of this Court's

Praetorian Guard from any semblance of lawful restraint, this case deals with "power". As Patrick

Henry reportedly stated: "Power is the great evil with which we are contending. We have divided

power between three branches of government and erected checks and balances to prevent abuse of

power. However, where is the check on the power of the judiciary? If we fail to check the power

of the judiciary, I predict that we will eventually live under judicial tyranny."

Here, that judicial "power" is being used by this Court to erode by "silent approaches and

slight deviations from legal modes of procedure" the right to access court and have the court declare

"what the law is" regarding: (i) the meaning of the term "natural born Citizen" found in Article II,

§ 1, (ii) the right to petition the Grand Jury and (iii) the apparent release of unrestrained armed

guards to intimidate those who would brave this Court's front-door.

If such not be the case, then the Defendants' Motion to Dismiss must be denied.

### REQUEST FOR ORAL ARGUMENT

Sibley respectfully requests – and believes it is his inalienable right under the Fifth and Sixth

Amendments of the United States Constitution – to a "hearing" and oral argument on the

Defendants' motion to dismiss given the complicated nature of the facts and the value that such an

argument would provide to a fair resolution of the issues herein. *See*: *Londoner v. Denver*, 210 U.S.

373 (1908)("On the contrary, due process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing."); *Federal Communications Commission v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276 (1949)("Without in any sense discounting the value of oral argument wherever it may be appropriate or, by virtue of the particular circumstances, constitutionally required . . ." (Footnote omitted).)

Indeed, Federal Rules of Civil Procedure, Rule 78(b), expressly requires such a hearing unless: "By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings".   Notably, the Local Rules provide for no such determination without oral hearings.

WHEREFORE, Sibley respectfully requests oral argument on the motion to dismiss.

### CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2012, a true copy of the foregoing was caused to be served on the following by U.S. First Class Mail, postage Pre-paid: Eric J. Soskin, United States Department of Justice, Civil Division, Federal Programs Branch, 20 Massachusetts Ave., NW, Room 5134, Washington, D.C. 20001 (email: eric.soskin@usdoj.gov), Tel: (202) 353-0533/Fax: (202) 616-8202.

MONTGOMERY BLAIR SIBLEY
PETITIONER/PLAINTIFF
4000 Massachusetts Ave, NW, #1518
Washington, D.C. 20016
Voice/Fax: 202-479-0371

By: _____
Montgomery Blair Sibley



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

2604 Jefferson Davis Hwy.
Alexandria, VA 22301

November 30, 2009

Montgomery Blair Sibley
3700 Massachusetts Avenue, N.W.
Apartment 519
Washington, DC 20016-5808

### Re: Freedom of Information/Privacy Act Request No. 2010USMS14163
### Subject of Request:   Self

Dear Requester:

The United States Marshals Service is responding to your request for records in this agency's files pertaining to the above subject.

Pursuant to your request, **[X]** the Marshals Service conducted a search of its files and located documents which are responsive, or **[ ]** the Marshals Service received documents referred from another agency for disclosure determination and direct response to you.  The paragraphs checked below apply:

**[ ]** All documents located or **[ ]** all documents referred from another agency are being released to you without deletions.

**[X]** Documents are being released to you; however, certain documents or portions of documents are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a.  Please refer to the list on page 2 of this letter for a description of information being withheld and the basis for withholding.

**[ ]** Our search located document(s) which originated with or contain(s) information which originated with (an)other component (s) of the Department of Justice or with (an)other government agency(ies).

> **[ ]** Information contained in Marshals Service records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for consultation in accordance with 28 C.F.R. § 16.4 and/or § 16.42. The Marshals Service will correspond with you again upon completion of this consultation.
> **[ ]** Records which originated with (an)other agency(ies) and a copy of your request have been referred to the originator(s) for disclosure determination and direct response to you in accordance with 28 C.F.R. § 16.4 and/or § 16.42.

**[ ]** Your request is being denied pursuant to the Freedom of Information Act and/or Privacy Act exemption(s) identified by mark(s) on the following list.

**[X]** If you are dissatisfied with my action on this request, you may appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001.  Your appeal must be received

within 60 days of the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information/ Privacy Act Appeal."  In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

[X]  The enclosed material is provided for your further information.

Sincerely,

William E. Bordley
Associate General
Counsel/FOI/PA Officer
Office of General Counsel

Enclosures

| | |
|---|---|
| Number of Documents Located or referred from another agency: | **60** |
| Number of Documents Released: | **60** |
| Number of Documents Referred to another agency: | **0** |
| Number of Documents Withheld: | **0** |

| Freedom of Information Act | Privacy Act |
|---|---|
| 5 U.S.C. § 552 | 5 U.S.C. § 552a |

Exemptions cited

[] (b)(1)  [] (b)(2)  [] (b)(3) [] (d)(5)  [X] (j)(2)
[] (b)(4)  [] (b)(5)  [] (b)(6) [] (k)(1) [] (k)(2)
[] (b)(7)(A) [] (b)(7)(B)     [] (k)(5) [] (k)(6)
[X] (b)(7)(C) [] (b)(7)(D)
[] (b)(7)(E) [] (b)(7)(F)

Description of Information Withheld:

[] Administrative marking(s)
[X] Names of and/or information on government employees
[] Names of and/or information pertaining to third-party individual(s)
[] Confidential source information
[] Other:_____

United States Marshals Service
LIMITED OFFICIAL USE
Subject Report for SIBLEY,MONTGOMERY BLAIR (FID 1147015)



Name : SIBLEY,MONTGOMERY BLAIR
FID# : 1147015
Status : Historical  Subject is NOT in NCIC for USMS

### Subject Description List

| Seq. # | Eyes | Hair | Height | Weight | Skin | Race | Sex |
|--------|------|------|--------|--------|------|------|-----|
| 1 | | | | | | W | M |

### Occupation List

| Seq. # | Occupation | | | Begin | End |
|--------|------------|--|--|-------|-----|
| 1 | LAWYER | | | | |

### Associate(s) of this Subject

| FID# | Associate Name | Type |
|------|----------------|------|
| 1147013 | UNKNOWN,TARGET | THREATENED BY 0604-0413-1568-T |

### Profile Information

| | | | |
|--|--|--|--|
| Money Launderer | No | DEA - GDEP | |
| "Kingpin" | No | Violent Offender | No |
| Triggerlock Case | No | International Lookout Placed | No |

### Sex Offenses

| | | | |
|--|--|--|--|
| Arrest | No | Conviction | No |
| Registered | No | Registration Violation | No |

### USM11 List

| USM11 ID | Type | | Reported By | Creation Date | Case |
|----------|------|--|-------------|---------------|------|
| 98172 | Memorandum to File | 7C | ███████ | 12/11/2006 2:17 PM EST | 0604-0413-1568 T |

Case Number: 0604-0413-1568-T
    Case Status: Closed
    Originating District: 004 - FL/S MIAMI

    I.C. Information:
        Receiving Person: 1147013 - UNKNOWN,TARGET
            USDCO
        I.C. Date: 12/15/2005
        Received Date: 12/15/2005
        Reported Date: 12/19/2005
    Address Information:
Received At Unknown    Sent From Unknown

    Method of Delivery: Written - Unreliable
        Financial: Adequate Finances
      Employment: Skilled
    At Risk by Court Action: Residence
        Familiarity: No Evidence
    Investigation By: USMS
    Incident Report:

7C DUSM ███████ received a call from Charles Fahlbusch, senior Assistant Attorney General, Office of the Attorney General State of Florida this morning. He called to make DUSM ███████ aware of an individual, Montgomery Blair Sibley(esquire), who has filed numerous motions/documents with the state court and currently has ongoing federal litigations with our court. In his most recent correspondence case 05-12678-C US Court of Appeals for the 11th Circuit, Sibley claims that he has had his children taken away from him for 2 1/2 years and references in a footnote(3) an article related to Courthouse Suicides and the Male Suicide Epidemic. End of report.

    Remarks:
ADMIN CLOSURE 04/16/07
    Close Information
        Date Closed: 12/11/2006
        Date Executed: 12/11/2006
        Execution Code: FALSE

United States Marshals Service
LIMITED OFFICIAL USE
Subject Report for SIBLEY,MONTGOMERY BLAIR (FID 1147015)



Arrested in District: 004
To Be Prosecuted: N
Close Summary: SUBJECT FILED MOTION WITH THE STATE OF FLORIDA COURT SYSTEM WITH
REFERNCES TO COURTHOUSE SUICIDES.  SUBJECT IS A PRACTICING
ATTORNEY.  NO NEW ACTIVITY HAS BEEN REPORTED IN THIS CASE IN OVER
SIX MONTHS.  CASE IS CONSIDERED CLOSE.